186 459
186 468
186 469

186 459
23 SC 249

# West Philadelphia Passenger Railway Company and the Philadelphia Traction Company *v.* Philadelphia & West Chester Turnpike Road Company, Appellant.

*Turnpike companies—Street railway companies—Abandonment of franchise—Estoppel—Acts of March 15, 1865, and April 5, 1870.*

The Act of March 15, 1865, P. L. 356, authorized the West Chester Turnpike Road Company to purchase the franchises of the Delaware County Passenger Railway Company, " provided that the said turnpike road company may remove the track and superstructure of said railroad, and dispose of the materials thereof and of the other property so purchased ; upon condition, however, that they shall within three months after the removal of any part of said track and superstructure restore that part of the road to as good order and condition for public travel as the same was in before said railroad track was laid." The turnpike company operated the railway for less than a year, when it took up the rails and restored the surface so as to permit safe travel by vehicles. The minutes and records of the company show that this was done because the operation of the railway was unprofitable. By the Act of April 5, 1870, P. L. 890, the city of Philadelphia was authorized to open, grade and pave Market street from Forty-third street, west to the county line, as soon as the Philadelphia & West Chester Turnpike Road Company " had given up and released free of charge to the city of Philadelphia all the interest of said company in that portion of their road occupying the bed of Market street within the limits of said city." In 1872, the turnpike company executed to the city of Philadelphia a release of all its " right, title and interest, and corporate franchises and privileges of the said company " in Market street, which it had acquired " by virtue of its corporate rights therein and thereto, or otherwise howsoever." Nothing relating to the railroad was reserved. The city subsequently opened, widened and paved Market street to the county line and, in 1881, with the consent of the city, the West Philadelphia Passenger Railway Company extended its line to the city boundary. and subsequently constructed a double line trolley railway thereon, and repaved Market street from curb to curb with an improved pavement. In 1892, the turnpike company asserted its right to reconstruct a railway on Market street. *Held*, (1) that both the West Philadelphia Passenger Railway Company and the city of Philadelphia had a right to assume that the turnpike company had forever relinquished its right to build a railroad, and it, having misled both, was estopped from asserting that right ; (2) that the evidence was sufficient to show that the turnpike company had in fact abandoned the right to build a railway ; (3) that under the act of 1870, the turnpike company had the right to release its franchise to maintain a railway ; (4) that the release executed to the city of Philadelphia included the right to maintain a street railway on Market street ; (5) that it was not error to enter a decree perpetually enjoining the

turnpike company from laying street railway tracks and operating a passenger railway on Market street.

Hinchman v. Philadelphia & West Chester Turnpike Road Co., 160 Pa. 150, commented upon and explained.

Argued Jan. 18, 1898. Appeal, No. 106, Jan. T., 1898, by defendants, from decree of C. P. No. 4, Phila. Co., Dec. T., 1894, No. 295, on bill in equity. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Bill in equity for an injunction.

The facts appear by the opinion of the Supreme Court.

The case was referred to Charles E. Morgan, Esq., who reported in favor of the complainant.

Exceptions to the referee's report were dismissed in an opinion by WILLSON, J., and the following decree was entered: "On the 29th day of January, 1897, it is ordered and decreed that the defendant be perpetually enjoined from laying railroad tracks on and along Market·street in the city of Philadelphia from Thirty-fifth street to Sixty-third street, and from maintaining and operating a passenger railway thereupon, and that it pay the costs of this suit."

*Error assigned* among others was the decree of the court.

*George Tucker Bispham* and *George Wharton Pepper*, with them *J. McGregor Gibb*, for appellant.—The franchise to operate a passenger railway is not embraced within the act of 1870 : Dwarris on Statutes, 144; Penna. R. R. Co. v. Riblet, 66 Pa. 164; Com. v. Nav. Co., 66 Pa. 83; Phila., etc., R. R. Co.'s App., 120 Pa. 90.

The railroad franchise is not covered by the resolutions of the company defendant passed by the stockholders.

The railroad franchise is not embraced within the true meaning of the deed of August 29, 1872: Criswell v. Grumbling, 107 Pa. 408; Mergenthaler's App., 15 W. N. C. 441; Hannum v. West Chester, 70 Pa. 367; Bickford v. Cooper, 41 Pa. 142; Codding v. Wood, 112 Pa. 371; Berridge v. Glassey, 112 Pa. 442.

*Rufus E. Shapley*, with him *Ellis Ames Ballard* and *John G. Johnson*, for appellees.—We contend that the decree which was

recommended by the referee and entered by the lower court should be sustained on either (or both) of two grounds: First, by reason of the release executed by the company; and, secondly, on account of the abandonment and nonuser of the railway franchise for thirty years: Junction Pass. Ry. v. Williamsport Pass. Ry., 154 Pa. 128; Western Penna. R. R. Co.'s App., 104 Pa. 399; Penna. R. R. v. Street Ry., 176 Pa. 559; Com. v. Bala, etc., Turnpike Co., 153 Pa. 47.

*James Alcorn*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for the city of Philadelphia.

OPINION BY MR. JUSTICE DEAN, July 21, 1898:

The Delaware County Passenger Railway Company was incorporated under the special act of March 25, 1859, which authorized it to build and operate a passenger railway connecting with the West Philadelphia Passenger Railway on Market street, at or near the western terminus thereof on Market street, thence westwardly along said street to the West Chester Plank Road, thence along said road as the public convenience might require. It was authorized to use dummy steam engines for moving its cars. The railway was built and operated until the year 1865, when it was sold at a judicial sale, and purchased by the West Chester Turnpike Road Company, this appellant, under authority of a special act of assembly of March 15, 1865. It was operated by the purchaser for a short time, less than a year, when it took up the rails and restored the surface, so as to permit safe travel by vehicle. On April 5, 1870, the legislature, by special act, authorized the city to open, grade and pave Market street from Forty-third street west to the county line, as soon as the turnpike company "have given up and released free of charge to the city of Philadelphia all the interest of said company in that portion of their road occupying the bed of Market street within the limits of said city." Accordingly, on August 29, 1872, the turnpike company executed a release to the city, which states as follows: "Now therefore . . . . in order to enable the said city to have direct and absolute control of and to grade and pave Market street, as contemplated by said act of assembly of April 5th, 1870, the said Philadelphia and West Chester Turnpike Road Company have remised, released

and forever quitclaimed, and by these presents doth remise, release and forever quitclaim unto the said city of Philadelphia, all that part of the Philadelphia and West Chester Turnpike and Plank Road aforesaid, lying within the limits of said city, and occupied by Market street from, at or about Forty-third street to the western boundary of the city of Cobb's Creek; and all the estate, right, title and interest, and corporate franchise and privileges whatsoever of the said company therein, freed and discharged of and from all rights, franchises, privileges, claims and demands whatsoever, to the said company therein, so that the said company shall hereafter exercise no control whatsoever over any portion of the said road hereby released and surrendered." After delivery of this release, the city, in subsequent years, at a heavy cost, opened, widened, curbed, graded and paved Market street to the boundary. In 1881, the West Philadelphia Passenger Railway Company, one of these plaintiffs, by the formal consent of the city, extended its lines on Market street to Sixty-third street, very close to the county line and, before any assertion of right by defendant, began the construction of a double track trolley railway, which is completed and in operation. As a consideration for the privilege granted by the city, at a large expenditure, it repaved Market street from curb to curb with an improved pavement. In 1892, the turnpike company decided to reconstruct the railway on Market street, and obtained the formal approval of the plans therefor by the board of highway supervisors of the city, when these plaintiffs filed their bill for an injunction, averring that defendant is without right on said street; that if its road be constructed and put in operation, it will seriously obstruct and interfere with the exercise of plaintiffs' franchise on same street. After answer filed by defendant, Charles E. Morgan, Esq., was agreed upon as referee, who, after hearing the testimony, found that defendant had released to the city, not only its right to maintain a turnpike road, but also the right and franchises of the Delaware County Passenger Railway, and that defendant should be enjoined from proceeding with the reconstruction of the railway on Market street. To this report, exceptions were filed by defendant, which the court overruled and confirmed the report of the referee. From that decree, we have this appeal.

Appellant's principal contention is, That the court below erred

in its conclusion that the act of April 5, 1870, and the release executed to the city by the West Chester Turnpike Road Company, included by its terms the street railway franchises of the company on Market street.

The turnpike company purchased the property and franchises of the Delaware County Passenger Railroad Company, by authority of the act of April 15, 1865, which empowered the purchaser to remove the track and superstructure. Immediately after purchase in 1865, the turnpike company took up and removed the railway tracks and superstructure. The intention of the company is best ascertained from the testimony of those representing it at that time, and from its records. William Rhoads, at that time a director of the turnpike company, and afterwards its president, says, in his testimony, in answer to a question as to how the stock of the railroad company got out of possession of the turnpike company : " I cannot tell you how, excepting, when the railroad that was purchased by the . . . . turnpike company, and for a short time, not a great while, was run by them—then it was abandoned and, as a matter of course, the stock was sunk, I suppose." Then, notice the minute of the report of the directors of the turnpike company to its stockholders, January 1, 1866 : " The Delaware County Railroad having become a failure, and its dilapidated condition annoying and injurious to our road, we deemed it best to purchase it, which we have done at a cost of $4,100, and the iron of the railroad we have removed and sold, for which we received $5,118.75. The tracks of the railroad have been temporarily improved for wagon travel, which added to our expenses, although had we not purchased the road, we should have been obliged to do something for its improvement in our defense."

From these significant facts and declarations of the company it is clear that the right to exercise the franchise of the railroad company on Market street was discontinued, because at that time the railroad was profitless. With this estimate of its worthlessness continuing down to 1870, the company, then, by the special act, was by plain implication given authority to release all its interest in that portion of its road occupying the bed of Market street within the city limits. At this point, we do not choose to discuss the question as to the power of the turnpike company to wholly and forever, without

the consent of the commonwealth, abandon or relinquish a franchise granted for the convenience and benefit of the public. The case is clear on other grounds. On a fair construction of the act of 1870, what power did it confer? The express words were : " As soon as (the company) have given up and released all the interest of said company in that portion of the road occupying the bed of Market street." We concede that a release was optional with the company; it was not bound to execute one at all; if it had executed it so far as, in terms only, to release the right of the turnpike company, leaving undisturbed its right to a railroad on the street under its purchase of the franchise and property of that company, it might be a question whether a fragmentary exercise of the power had affected its right to maintain a railroad on the street. But, clearly, the right to release all its interest, necessarily included the railroad franchise. That was a right to lay railroad tracks and operate a railroad on that street; this was an interest, a word which when used to designate a property right has been held to include every possible claim or title. The appellant argues that from the title of the act of 1870, and the purpose of the legislature as disclosed in it, it was not the intention to authorize a surrender of the railroad right on Market street. It seems to us, from the title and body of the act, that the object was to unfetter the city authorities in their municipal action to open, widen, grade and pave Market street. The exercise of a turnpike franchise, with its toll gates on the street, was an obstruction to the public ; the city could not in justice to itself widen, grade and pave a street at the cost of the citizen, and leave him subject to the exaction of tolls by a corporation for traveling upon it; nor, in our view of the situation, would it have been just to do the same work at the same expense, and at the same time permit without compensation the best part of this graded and improved highway to be occupied by a street railroad company. Both franchises stood in the way of a liberal and proper exercise of municipal power over the street. And we must assume that the legislature was not ignorant of the act of 1865, which authorized the purchase of the railroad franchise in pursuance of it by the turnpike company. The intent of the act of 1870 manifestly was to free the street from any impediment to the absolute exercise of municipal control.

With, then, a statutory power to release this interest, what was released by the writing? We have heretofore quoted some of the language, "All the right, title and interest and corporate franchises and privileges of the said company therein," are quitclaimed and released. They relinquish all their rights on Market street which they have acquired "by virtue of their corporate rights therein and thereto, or otherwise howsoever." When we consider the fact that all the property and franchises of the railroad company on the street were then fully vested in the turnpike company, they certainly passed from it as concerns this street, by these sweeping words. Nothing relating to the railroad was reserved; there was a reservation of a right to remove a tollhouse. The right to operate a railroad was not reserved, because, as heretofore noticed, such right was valueless to the company and not worth reserving; in the opinion of its officers, it would have been at that date the reservation of a burden.

But there is another point raised which is conclusive against defendant's right on Market street. The act of 1865 conferred on it authority to purchase the railroad property and franchises: "Provided that the said Turnpike Road Company may remove the track and superstructure of said railroad, and dispose of the materials thereof, and of the other property so purchased; upon condition, however, that they shall within three months after the removal of any part of said track and superstructure restore that part of their road to as good order and condition for public travel as the same was in before said railroad track was laid."

In the most favorable construction to defendant this act gave the turnpike company the optional right to continue operating the railroad, or to temporarily suspend and again resume operations, or to permanently discontinue operating it. Which option did it exercise? It must be kept in mind that at that date the greater part of what is now Market street from the then western terminus of the West Philadelphia Passenger Railway was in character a country road; within a few months, the purchaser took up the rails and sold the equipment. Why? In their official report to their stockholders, heretofore quoted, the directors say, because it has "become a failure, and its dilapidated condition annoying and injurious to our road." There is no

hint that the exercise of the franchise might in the future prove profitable and again be resumed, but if there be any meaning in language it is discontinued, because, as a railroad, it has accomplished its destiny. The roadbed so remains until 1870, when, soon after, under that act, the company executes the sweeping release to the city. In view of the terms of that instrument, the city, at a very large expenditure, widens and improves the street, which has nothing upon it to indicate an assertion of a right of occupancy for railroad purposes by defendant; then, the West Philadelphia Passenger Railway Company, for a costly consideration paid the city, constructs its railway, at a large expense, upon the same street. Then, after twenty-eight years of silence, the defendant now asserts a right to reconstruct its railroad.

Assume from the language of the act of 1865, a temporary cessation of the occupancy of the street for railroad purposes was authorized, it, with as much clearness, authorized a permanent discontinuance of that enterprise. But its conduct, instead of indicating a temporary suspension, every act and omission to act, after the purchase, were significant of an intention to permanently discontinue the use of the street under the railroad franchise. It put an interpretation on the act entirely justified by its words, and forever gave up its right. It is not necessary to consider whether, if nothing had been done by others, in face of this plain attitude of defendant, it could have resumed its railroad occupancy of the street, and we do not decide that point; but we do decide that both the plaintiffs and the city had a right to assume that defendant had forever relinquished its right at the time they expended their money; and defendant, having misled both, is now estopped from asserting a right.

One other point demands notice. In the case of Hinchman v. Philadelphia & West Chester Turnpike Road Co., 160 Pa. 150, a question, apparently involving in some degree the same contention, was before this Court. The suit was begun in the common pleas of Delaware county. Hinchman, as a stockholder of the turnpike company, filed his bill averring the purchase by his company of the franchises of the railroad company in 1865; that it had operated the railroad until November of that year when it sold all the equipment; that from that time up to March, 1893, the road had not been operated, but that now, the

turnpike company had commenced to rebuild the road with a view to operating it. Plaintiff's prayers were that the court decree that the rights and franchises be declared lapsed because of nonuser, and that the turnpike company be enjoined from reconstructing the road. The defendant demurred to the bill, mainly on the ground that a forfeiture of a charter of a quasi-public corporation could not be declared or enforced by an individual stockholder in equity. The court sustained the demurrer for that reason. The plaintiff appealed to this Court, and the decree was affirmed in an opinion by our Brother Green, because a temporary adandonment was impliedly authorized by the act of 1865, and such abandonment was no cause of forfeiture; and also, for the reason given by the court below that an individual stockholder could not maintain a bill for forfeiture of charter because of nonuser; that such suit must be instituted by the commonwealth. From the testimony of J. N. M. Shimer, a director, the case cited was what is called a "made up case." The parties were not really antagonistic, but only apparently so; both desired a decision in favor of the right to reconstruct the railroad on Market street, and such decision would have been profitable to both. The whole case, embracing the most material part of it, was neither exhibited in the court below nor in this Court on appeal; it was submitted here on paper-books without argument. The prominent facts on which the cause turns, the conduct of defendant, the act of 1870, the formal release, and the minutes of the turnpike company in reference to the release to the city of Philadelphia, formed no part of the case in Delaware county. Without their knowledge, doubtless, counsel on each side were selected by the same parties, who desired the decree as it was made. It is altogether probable that any case thus presented in any court will be followed by such a decree as those seeking it desire; that is, if part of the most material evidence be kept back, and that on which the case is made to turn be insufficient to establish the conclusion apparently sought by the nominal plaintiff, a decree for defendant must follow. Anything said by a court under such circumstances, can only have application to the facts before it. Under no circumstances is a decree so obtained permitted to prejudice the rights of third persons, and rarely is the judgment of any value as a precedent. The law announced

in that case, both in the court below and here, is incontrovertible. It has application only to facts showing no discontinuance of the exercise of its franchises, and no formal relinquishment of them by legislative authority.

The assignments of error are overruled, and the decree of the court below is affirmed at costs of appellant.