STATE OF VERMONT *v.* ERNEST MASSEY, B. G. HOWE, AND FIRST NATIONAL BANK OF ST. JOHNSBURY AND HENRY MASSEY.

October Term, 1899.

Present : TAFT, C. J., ROWELL, TYLER, MUNSON, START AND WATSON, JJ.

Opinion filed April 13, 1900.

*Chancery—Practice under Rules 15 and 17—Discretion of chancellor upon overruling demurrer*—When a demurrer, incorporated into an answer to a bill in chancery, is heard and overruled, and the demurrant does not ask leave to withdraw it, nor to waive it and go to trial on the merits, but asks to have the answer brought forward, and to have the benefit of the demurrer reserved to him till final hearing, the question of whether or not such benefit shall be so reserved rests entirely in the discretion of the chancellor. It is within his discretion to decide whether or not the defendant shall have the benefit both of an admission and of a denial, before the case is passed to the Supreme Court.

*Considerations guiding discretion—Practice in Supreme Court on sustaining a decree overruling a demurrer*—It is the practice of the Supreme Court, upon sustaining a decree overruling a demurrer, to remand with leave to answer over, and this practice bears upon the wisdom of a chancellor in refusing the benefit of both an admission and a denial before the case is passed to the Supreme Court.

*Considerations guiding discretion—Construction of new statute*—That a bill is brought to enforce a new statute which requires a construction by the Supreme Court, tends to show the exercise of a wise discretion on the part of the chancellor in sending the case to the Supreme Court for determination upon questions of law raised by a demurrer, before a trial upon the issues of fact is had.

*Considerations guiding discretion—Statutory duty of Supreme Court*—In the exercise of such discretion the chancellor may well consider that the statute makes it the duty of the Supreme Court, upon hearing and determining a chancery appeal, to affirm, reverse or alter the decree as justice requires, and then to remand to the Court of Chancery.

*Chancellor's discretion analogous to that of County Court under V. S. 1629*—Such exercise of discretion on the part of the chancellor as results in the determination of questions of law before a case is heard upon its merits, is analogous to the exercise of the discretion of the County Court under V. S. 1629, in passing a cause to the Supreme Court before final judgment.

*Construction of No. 90, Acts of 1898—Discretion of state's attorney*—No. 90, Acts of 1898, in providing that the owner of, and all persons interested in a building alleged to be maintained as a liquor nuisance may be joined with the keeper in proceedings in equity, is not mandatory, but leaves it to the discretion of the state's attorney whether to join the owner and other parties interested or not.

*Construction of No. 90, Acts of 1898—When owner should be joined—Allegation of knowledge necessary*—No. 90, Acts of 1898, is construed to mean that the state's attorney should exercise his discretion to make the owner of the building or premises alleged to be a nuisance a party to the proceeding, when he has reason to believe that the owner had knowledge of the existence of the nuisance. In case the owner is joined there must be an allegation of his knowledge in the information.

*When owner should be enjoined—Liability for costs*—If, under a proper allegation, the owner is joined, and on hearing it is adjudged that he knew, or under the circumstances had reason to suppose, that his property was being used for the unlawful purposes charged, an injunction should be granted against him, and he should be liable for costs.

*When owner should not be enjoined—Landlord's liability for nuisance same as at common law*—Unless knowledge or ground of knowledge on the part of the owner is alleged and proved, he is not liable to an injunction. The liability of the landlord for a nuisance maintained by his tenant stands under the statute as it stood at common law.

*Scope of injunction against owner*—If the owner is enjoined, the injunction should be upon his entire building. His knowledge implies assent, since it gives him power to terminate the tenancy ; and if he assented to the existence of the nuisance in one room of his building, that being abated, it would be likely to appear in another.

*Scope of injunction against keeper only*—If the injunction is against the keeper only it should operate only upon such rooms as are in his occupancy or under his control. In this case the injunction against the keepers is construed to extend to no other parts of the building in question than the rooms occupied by them.

*Injunctions against persons other than owner and keeper—Mortgagees—Allegations and proof of right of possession or control necessary*—Persons other than the owner and keeper having an interest in the premises cannot be enjoined without allegations and proof of the right of possession or control. A mortgagee cannot be enjoined without such allegations and proof.

*Allegation of continuance of nuisance not necessary*—An information under the act in question need not allege a continuance of the nuisance to the time when the information is filed.

BILL OF COMPLAINT brought to the Court of Chancery for Caledonia County by the State's Attorney for said County. The defendants, Ernest Massey and Henry Massey, did not appear, and as to them the bill was taken as confessed on such default. The defendants, B. G. Howe and the First National Bank of St. Johnsbury, filed their answer and therein incorporated their demurrers. The cause was heard on said demurrers at the June Term, 1899, before *Thompson,* Chancellor, who overruled the demurrers and adjudged the bill sufficient. The demurrants thereupon moved to have the benefit of their demurrers reserved to them till final hearing, and to have their answer brought forward for hearing. This motion was denied and it was considered and adjudged that as to them the bill be taken as confessed. It was further adjudged and decreed that the common nuisance, set forth in the complaint, had been kept and maintained as therein alleged, and that each and all of said defendants, and each of their servants, lessees, tenants and assigns be perpetually enjoined from keeping and maintaining such nuisance and from suffering it to be maintained. It was further decreed that the answering defendants pay costs of suit, except the cost of service of process on the defaulted defendants. The defendants Howe and said Bank appealed.

The bill of complaint was filed May 24th, 1899, and charged that certain rooms in the St. Johnsbury House, so called, were kept and maintained as a liquor nuisance by its occupants, the defendants Ernest Massey and Henry Massey, that the defendant B. G. Howe was the owner of said house, and that the said Bank had an interest therein as mortgagee. A conviction at law of the defendant, Ernest Massey, before the bringing of the bill was alleged.

The bill contained no allegation of knowledge on the part of the answering defendants. It prayed for the injunction granted by the Chancellor.

*Leighton P. Slack,* State's Attorney and *Alexander Dunnett* for the State.

*Henry C. Ide* and *Harry Blodgett* for the defendants, B.G. Howe and First National Bank of St. Johnsbury.

TYLER, J.  I.  The decision of one question in this case, which has been discussed at considerable length by counsel for the defendants, must depend upon the practice that should prevail under rules 15 and 17 in chancery.  Rule 15 reads :

"Instead of filing a formal plea or demurrer, the defendant may insist in his answer on any special matter that goes to the merits of the bill, and have the same benefit thereof as if he had pleaded the same or demurred to the bill."

Availing themselves of this rule, the defendants Howe and the First National Bank filed their answer and incorporated therein a demurrer.  The legal effect of the demurrer was the admission of the truth of all the well pleaded facts set forth in the information.  The demurrer, in the usual form, denied that the complainant had made such a case as entitled it to the discovery or relief sought, demanded the judgment of the court whether the defendants should be compelled to make any further answer, and insisted upon this special defense in accordance with said rule 15.

The information was taken as confessed as to the defendants Massey, they not appearing, but as to the defendants Howe and the First National Bank the case was heard upon their demurrer, and after consideration of the arguments of the respective counsel, the Chancellor adjudged that the demurrer be overruled and that the information was sufficient.  Upon the rendering of this decision, the defendants Howe and the First National Bank moved to have the benefit of their demurrer reserved to them till final hearing, and to have their answer brought forward for hearing, which motion was denied, the information was taken as confessed, and it was adjudged, "that such common nuisance had been kept and maintained as alleged in said information, and it is considered and decreed that each and all of said defendants, and their and each of their servants, agents, lessees, tenants

and assigns, be, and they and each of them are, perpetually enjoined from keeping and maintaining such nuisance and from suffering it to be maintained in said building and land, described in said bill of complaint."

The defendants elected to stand upon their demurrer, "insisted upon this special defense," and brought the case to a hearing upon the issue thus made, whether, admitting all the allegations in the information, the orator was entitled to an injunction.

The situation was not a novel one under our present rules of practice in chancery. The defendants had acted in accordance with what this court said in *Westminster* v. *Willard*, 65 Vt. 266,—that under the former practice, when the demurrer was contained in the answer, it was not brought on until the whole case was heard on the merits, but that under the new practice the demurrer must be brought on before the case is heard on the merits, otherwise it is waived. The demurrants in this case evidently acted in pursuance of the later practice. In the case above cited, the court, after referring to the former practice, that when a demurrer to the whole bill was overruled the defendant was ordered to answer, and the court might and often did reserve the right to raise the same question at the hearing, said, quoting in substance the 17th rule in chancery:

"But under the new rules in chancery, when a demurrer is overruled the bill should, regularly, be taken as confessed, and the matter thereof be proceeded with and decreed accordingly; if it can be done without an answer and is proper to be decreed; but if a discovery is required to enable the complainant to obtain a proper decree, the defendant will be ordered to answer as far as necessary for that purpose."

It cannot be claimed, and is not insisted upon in the briefs, that a discovery was required to enable the complainant to obtain a proper decree. The demurrer was to the whole information and to the sufficiency of its allegations. The demurrants were not without rules for their guidance when the demurrer was overruled. The court further said in *Westminster* v. *Willard*

"There are several ways open to the defendant when his demurrer is overruled. He may let the bill be taken as confessed under the rule and take the case up on demurrer ; or he may ask leave to withdraw his demurrer, or to waive it, and to go to trial on the merits; or he may ask to have the benefit of the demurrer reserved to him till the hearing. If it is reserved, the better practice would be, of course, to make a special order to that effect, and not to leave the matter to implication."

The demurrants did not ask leave to withdraw their demurrer, nor to waive it and go to trial upon the merits—which request is usually granted—but they did request to have their demurrer brought forward for hearing, and that the benefit thereof might be reserved until the hearing. Whether or not such benefit should be reserved rests entirely in the discretion of the chancellor, as is indicated in the words, "if it is reserved," in the paragraph last quoted.

The defendants, in the first instance, staked their case upon their demurrer, and insist in this court that the demurrer should have been sustained and the allegations in the information adjudged insufficient, and yet they insist here that as a matter of right, they should have been allowed a trial upon the merits—that they should have been permitted both to admit the facts alleged and to traverse them.

It rested entirely within the discretion of the Chancellor to decide whether the defendants should have the benefit both of an admission and a denial of the facts alleged before passing the case to this court, and we think that this discretion was wisely exercised, especially in view of the fact, that it is the practice in this court, upon sustaining the decree of the court below, overruling a demurrer, to remand the case with leave to the demurrant to answer over. It was said in *Stewart* v.*Flint,* 57 Vt. 216, that when a demurrer is overruled, it is discretionary with the court to remand the case for trial, or for final decree ; but it will not remand for final decree without exceptional circumstances.

If the Chancellor who made this decree had been sitting as presiding judge in the County Court, and exceptions had been taken and filed in a cause, he might, in his discretion, under V. S. 1629, have passed the cause to this court before final judgment, for hearing and determination on the exceptions. This statute is often availed of, as the profession is aware, to have questions of law determined before subjecting the parties to the expense of a trial in the County Court.

As this bill was brought to enforce a new statute which required a construction by this court, the Chancellor may well have considered it advisable and in the exercise of a wise discretionary power to send the case here for hearing and determination upon the questions of law raised by the demurrer before the expense of a trial upon the issue of fact made by the answer and replication was incurred. The statute gives the right of appeal to the defendants and enjoins upon this court the duty to hear and determine the appeal and to affirm, reverse or alter the decree, as justice requires, and then to remand the case to the Court of Chancery. V. S. 981-985.

II. The Act of 1898 provides that the owner of and all persons interested in the building, as well as the keeper, " may be" made parties to the proceedings. The statute is not mandatory ; it is left to the discretion of the state's attorney whether to join the owner and others as parties or not. If the legislature had intended that they *should* be joined in every case it may be assumed that it would have said so in unmistakable terms. Then the question is, when should the state's attorney, in the exercise of this discretion, join the owner as a party ? To answer this question it is necessary to understand the *status* of the law relative to the respective liabilities of the keeper and owner prior to the enactment of 1898. No. 14, Acts of 1880, defined liquor nuisances substantially as defined in V. S. 4512. It provided for punishing the keeper and closing the place. It gave the owner the right to re-take his premises when used for such unlawful purpose, and provided a penalty upon his conviction of

knowingly letting them for that purpose. V. S. 4518, 4519. The keeper was made liable to a penalty by the fact that he *was* keeper; the owner, only when he knowingly let his premises for the unlawful purpose.

By No. 46, Acts of 1888, it was provided that upon such conviction any chancellor should have jurisdiction in equity, and that he should issue an injunction against the keeper upon his conviction of keeping a nuisance, while the liability of the owner, down to 1894, remained as provided in the Act of 1880.

By the Act of 1894, No. 68, V. S. 4526, it was first provided that parties interested in the real estate where the nuisance was maintained, as well as the actual parties to the nuisance itself, should be notified to appear in the Court of Chancery or before a chancellor in proceedings for a temporary injunction to abate liquor nuisances, which are defined in V. S. 4512 to be saloons, restaurants, groceries, cellars, shops, billiard halls, bar-rooms, drinking places or rooms used as places of public resort, and all buildings and erections of whatever kind, or the ground itself where intoxicating liquor is unlawfully sold, furnished, or given away, or kept for such unlawful purpose. The Act of 1898, No. 90, is more specific and provides that, " the owner and all persons interested in the building or premises in which such common nuisance has been kept and maintained, as well as the keeper, may be made parties to the proceedings." It further provides that, " if it is finally adjudged that such common nuisance has been kept and maintained or suffered to be maintained, the defendants, their servants, agents, lessees, tenants, and assigns shall be perpetually enjoined from keeping and maintaining such common nuisance or suffering it to be maintained in such building or premises or in any part thereof."

The important question here is whether the owner is liable to an injunction without being " adjudged" to have had knowledge of the unlawful use of his premises, and whether he can be properly joined as a party to the proceedings without an allegation in the information of such knowledge. The defendants

contend that the owner should not be joined without an allegation of his guilty knowledge; that the Act does not require it, but that the word "may" gives permission to join the owner upon the allegation of sufficient facts to warrant it.

It is apparent that the Acts of 1894 and 1898 were especially aimed at the places which former statutes had pronounced common nuisances. The former did not provide for making other "parties interested" parties to the proceeding, but the latter warrants the joinder of the owner and all persons interested in the building or premises, as parties. The injunction, if granted, is broader in its scope than it was by the former Act, for it enjoins the defendants and the other persons named in the Act from maintaining or suffering such nuisance in the building or premises, and the injunction is at once made perpetual.

The Act of 1898 gives the state's attorney authority to make the owner a party, and it is difficult to conceive in what circumstances this discretion should be exercised other than when there is ground for belief that the owner knew of the unlawful purpose for which his premises were being used, and in such case there should be an allegation in the information of such knowledge. If this fact is alleged and proved the owner remains liable to the penalty under V. S. 4519, and he is also liable to injunction. The law would operate unjustly upon the owner, if his entire hotel or other building were stamped as a nuisance, and an injunction were issued against it and recorded in consequence of the unlawful act of a tenant, committed without his knowledge—an act which, if known to him, he would have disapproved. A tenant might secretly convert a room in a business or other block into a drinking nuisance during the temporary absence of the owner from sickness or other cause, and in violation of an express condition in the lease. *State* v. *Price*, 92 Ia. 87, was in some respects such a case.

The Iowa Code, 2348, provides that, "Whoever shall erect, establish, continue or use any building or place for the unlawful manufacture, or sale, or keeping with intent to sell * * * intoxi-

cating liquors, shall be guilty of nuisance." Under this section the Iowa court has uniformly held that the owner could not be adjudged guilty and made liable to injunction without knowledge that his building was being kept for the unlawful purpose, and some of the cases hold that he must not only have knowledge but that his assent must be shown. *Martin* v. *Blattner*, 68 Ia., which is relied upon by the State, is not in point, for there the owner leased the property to the vendor of liquors, and refused to exercise his right to forbid the traffic and oust the violator. Knowledge was therefore implied, and the owner was justly held to be an aider and abettor of the traffic. In *State* v. *Price, supra,* it was held that the owner, not having permitted the unlawful act and having no knowledge of it, should not have been enjoined and held for costs.

It would be in accordance with the reason of the Iowa decisions to hold that the owner should not be made a party without an allegation in the information that he had, or, in the circumstances ought to have had knowledge of the existence of the nuisance upon his premises.

The information contains no allegation that either Howe or the Bank had committed an offense, nor that, in the exercise of reasonable care over their building, in the circumstances, they ought to have known that an offense therein was being committed by other persons. There is no reason to suppose that the legislature intended to depart from the rule of the common law which would not subject a landlord to the consequences of his tenant maintaining a nuisance without the landlord being chargeable with notice of the existence of the nuisance.

It is said by the counsel for the State that this is a civil proceeding; that the decree merely fixes the *status* of the property; that an adjudication that a building is a nuisance can only diminish its value by so much as its value has been enhanced by the unlawful use, and that an injunction only restrains the owner from suffering his building to be used for an unlawful purpose. It is true, however, that while the adjudication does not convict

the owner of crime, it casts odium upon him by reason of an unlawful act of another person, committed without his knowledge or fault.   He is made a party to the information and to the decree, and is enjoined without having violated the law himself or being chargeable with knowledge of its violation by his tenant, and the injunction compels him to be a guarantor that his tenant shall not violate the law in the future.

The Act of 1898 must be construed to mean that the state's attorney should exercise his discretion to make the owner of the building or premises a party to the proceeding when he has reason to believe that the owner has knowledge of the existence of the nuisance.   On the hearing, if it is adjudged that the owner had such knowledge, or, in the circumstances, he had reason to suppose that his property was being used for the unlawful purpose, an injunction should be granted against him as well as against the keeper, and he should be liable for costs.   On the other hand, if the judgment is in his favor upon this question, he should be discharged.   If the owner is enjoined, the injunction should be upon his entire building, because if he had knowledge of the nuisance his assent to it is implied from the fact that under the law he had power to terminate the tenancy.   If he permitted the nuisance to exist in one room in the building, that being abated, it would be likely to appear in another room.   If the injunction is against the *keeper* only it should operate only upon such rooms as are in his occupancy or under his control, and it should issue against such persons only as have power to control the tenement and abate the nuisance, though others may have an interest in the building.

The Bank as mortgagee could in no event be liable to an injunction, there being no allegation in the information that it had possession, or any right to the possession or control of the property.

We therefore hold—there being no allegation in the information of knowledge on the part of the defendant Howe and the First National Bank that the premises were kept for an unlawful

use—that those defendants were improperly' made parties to the proceeding.

III. The information is not defective by reason of its omission to allege a continuance of the nuisance to the time the information was filed. By V. S. 4523 the state's attorney is required immediately upon conviction of the keeper to file an information with the chancellor, setting forth the keeping of such nuisance, and such conviction; and yet he is not to be held in default of his duty if he files the information at any time within thirty days after such conviction. The keeper may have discontinued the nuisance within that time, but it is nevertheless the state's attorney's duty to file the information. Section 4524 provides that upon hearing, unless cause is shown, the chancellor shall issue an injunction restraining and enjoining such convicted person, his agents, servants and attorneys from longer maintaining such nuisance under penalty of being in contempt of court.

IV. Defendants further insist that the injunction upon the entire hotel building as to the defendants Massey was unnecesary and inequitable. The information only alleges that intoxicating liquors were unlawfully kept for sale, etc., by them in the billiard and pool rooms to the common nuisance of the public, and counsel for the State, in their arguments, construed the decree to extend to no other part of the building than the rooms occupied by the defendants Massey, and we give it that construction.

The other questions raised in the argument were settled in *State* v. *Murphy*, 71 Vt. 127. See also *Carlton* v. *Rugg*, 149 Mass. 550.

*Decree affirmed as to defendants Ernest Massey and Henry Massey; reversed and demurrer sustained as to defendants B. G. Howe and the First National Bank of St. Johnsbury, and the information as to them adjudged insufficient; cause remanded.*