LECHE, J., takes no part, not having heard the argument.

─────

(77 South. 141)

No. 20897.

CAPP v. SOUTHWESTERN TRACTION & POWER CO.

(Nov. 26, 1917.)

*(Syllabus by the Court.)*

STREET RAILROADS ⬥112(3) — COLLISION ON TRACK — PRESUMPTIONS — CONTRIBUTORY NEGLIGENCE.

From the fact that there was nothing to obstruct the plaintiff's view of an approaching trolley car at a safe distance from the position he occupied when he backed his automobile upon the railway track and was struck by an approaching car, the presumption is either that he did not look with sufficient care for the approaching car before going upon the track, or that he did not heed the danger that he should have seen if he did look.

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by Christopher Capp against the Southwestern Traction & Power Company. Judgment for defendant, and plaintiff appeals. Affirmed.

L. O. Hacker and Weeks & Weeks, all of New Iberia, for appellant. Foster, Milling, Saal & Milling, of New Orleans, for appellee.

O'NIELL, J. The plaintiff has appealed from a judgment rejecting his demand for damages for personal injuries, and for the destruction of his automobile, the result of a collision with an electric car of the defendant company.

The accident occurred in the daytime, in the city of New Iberia. The plaintiff had parked his car on the south side of Main street, near the curb, headed toward the west, a few feet above or west from Church street. The electric car was approaching from the east, along the center of Main street, shoving a trailer in front of it. Church street extends from Main street, at right angles, in a southerly direction. Opposite Church street is the end or beginning of Bridge street, somewhat wider than Church street, extending from Main street in a northerly direction. The position of the automobile was about 20 feet further west than the west line of Bridge street, and perhaps 40 or 50 west from the west line of Church street.

Coming from a picture show, the plaintiff, with four guests, a lady and three gentlemen, got into the automobile to go to a baseball game. The ball park being at the lower or east end of the city, it was necessary to turn the automobile around. When his guests were seated in the car, the plaintiff cranked the machine, got in and backed the car to the intersection of Church street, at the same time steering in a curve toward the north, intending to go upon or across the railway track in the center of Main street, and then come ahead in a direction curving toward the east, so as to go down on the right side or south side of Main street, in an easterly direction. When the automobile had backed upon and almost across the railway track, one of the men in the vehicle observed and called to the plaintiff that another automobile was coming very fast along Main street, on the north side of the railway track. To avoid a rear-end collision with the other automobile, the plaintiff stopped suddenly, while the front wheels of his car were yet on the railway track, and reversed his gears to go ahead; but before he could gain sufficient headway to clear the track, his car was struck by the trolley car, or rather by the forward end of the trailer. The automobile

was shoved along the track a distance of nearly 120 feet and was completely demolished. The occupants of the vehicle, fortunately, jumped out in time to avoid personal injury, except a severe shock to the nervous system.

The plaintiff contends that the electric car was running at an excessive and dangerous speed, without a lookout on the forward end of the trailer, and that the air brakes on the cars were not in order, or that the air tube was disconnected. He contended also, in his petition, that the railway company was at fault in failing to have a fender on the forward end of the trailer. But that charge of negligence is not urged in the brief filed in this court by the learned counsel for the plaintiff, and we assume it is abandoned. There was no municipal ordinance requiring that the cars should be equipped with fenders, and the evidence shows that a fender, in this instance, could not have prevented the accident or any of the damage that resulted.

There is, as is usually the case, much difference in the estimates of the speed at which the trolley car was going at the time of the accident, as stated by the witnesses. But we are convinced by the evidence that the speed was not more than 10 miles an hour. That is the limit of speed fixed by a rule or regulation of the railway company. There is a municipal ordinance fixing a speed limit of six miles an hour for trains traveling in New Iberia; but it was enacted before the advent of electric cars in that city and has reference only to steam railroad trains.

The evidence shows that there were two employés of the defendant company stationed on the forward end of the trailer, looking out for danger, and that they saw the danger and gave the alarm to the motorman immediately when the plaintiff backed his automobile upon the track.

The evidence shows also that the air brakes were in working order on the trolley car and trailer before the accident. The presumption that the brakes were out of order arose from the fact that the automobile was shoved so far along the track before the car could be stopped. But that was because the air tube on the trailer was broken by the collision. At the instant when the stop signal was given, the motorman, before applying the air brake, threw on the reverse gear; which was considered the quickest way to stop the cars, especially as the electric current had been already turned off, and the cars were coasting or running on their momentum. But, when the reverse was thrown on, as the motorman explained, "the circuit breaker went out," and the reversing of the mechanism had no effect on the cars. The motorman then immediately applied the air brake; but, before it could take full effect, the collision occurred and the air tube was broken. There was no fault or negligence on the part of the motorman.

As the defendant's employés in charge of the cars did not have the last clear chance—or any chance at all, for that matter—to prevent the accident, after the plaintiff put himself and his automobile in the situation of danger, he cannot successfully answer the defendant's alternative plea of contributory negligence. He testified that he had looked up and down Main street to see whether a trolley car was approaching, just before he cranked his automobile and got into it, and that he looked again after getting into the car, before he started to back upon the railway track. He accounts for his failure to see the car by assuming that it was beyond a curve in the track when he looked in the direction from which it was approaching. But the curve he refers to was only a slight curve more than a block away from the place of the accident, and it appears from the diagrams in evidence, and from actual measure-

ments, that there was nothing to obstruct the plaintiff's view of the approaching trolley car within the distance of 800 feet from the place where he got into his automobile. He testified that about 30 seconds elapsed from the moment when he first looked in the direction from which the car was approaching to the happening of the accident, and that, from the time he looked again, it required only about six seconds to back upon the track where the accident happened. If those estimates are correct, and the speed of the trolley car was 10 miles an hour, it was only 440 feet away, and in plain view, when the plaintiff first looked in the direction from which it was coming, and it was only 85 feet away, and yet in plain view, when he started to back upon the track in front of the approaching car. There is no doubt that the plaintiff could have backed entirely across the railway track before the approaching car could have crossed his path, if he had not been compelled to stop on the track to avoid a rear-end collision with the other automobile. But the plaintiff took that risk. It was impossible for the men in charge of the trolley car to avert the accident when the situation of danger arose. We are forced to assume either that the plaintiff did not look with sufficient care for an approaching trolley car immediately before he started to back upon the railway track, or that he did not heed the danger that he should have seen, if he·did look. That is the doctrine quoted from Wharton's Law of Negligence, § 384, and Beach on Contributory Negligence, § 63, in Herlisch v. Louisville & N. O. T. & R. Co., 44 La. Ann. 286, 10 South. 628, and affirmed in McShane v. N. O. Ry. & L. Co., 137 La. 830, 69 South. 268, citing Cowden v. Shreveport Belt Ry. Co., 106 La. 236, 30 South. 747, and Heebe v. N. O. & Carrollton R., L. & P. Co., 110 La. 970, 35 South. 251.

The judgment appealed from is affirmed, at the cost of the appellant.