DR. CHAS. F. GELBKE

 vs No. 7405.

WEST N. O. LT. & T. CO.,
 APPELLANT.

March 6th. 1919.

CHARLES F. CLAIBORNE, JUDGE.

This is a damage suit resulting from a collision. The plaintiff alleges that on May 22d. at 8:30 A. M. while he was driving his automobile over the track of defendant company, one of its cars negligently ran into his automobile from the rear, and so damaged it as to render it worthless-, and he sues for its value.

The defendant answered that it was in no manner guilty of negligence, but that the plaintiff contributed to the accident by his negligence and want of care.

There was judgment for the plaintiff and the defendant has appealed.

The facts are as follows:

Between the town of Gretna and Harvey, higher up the river, there is a dirt road; along the right hand side of the road, going up, there is laid a railroad track, over which runs the cars of the defendant company: along the left side of the road, and upon the left of the railroad track, lies the public roadway, 16 or 18 feet wide; from the point where the accident occurred looking back towards Gretna, the view is unobstructed and a car can be seen a quarter of a mile off; the public roadway extends up to the left rail of the railroad track, and the railroad bed between the tracks is not filled in, except for some two feet inside the track along the left rail; some parts of the public roadway were in bad condition, muddy, and had holes in it. Upon the morning of the accident, the weather was clear and bright; the plaintiff was driving his automobile upon the public road going up from Gretna to Harvey; the top or hood of his machine was up, and he was seated upon the left side of his machine as is usually the case; the railroad track ran along his right

101

When he reached the point where tne accident occurred, about one mile above Gretna, he saw a hole in the public road, and, in order to avoid it, he drove his machine to the right, across the left rail of the track, in such a manner that the two right side wheels were between the tracks, in other words, he was straddling the left rail of the track, when a car of the defendant company, which was also running up towards Harvey in the same direction as the automobile, overtook it and ran into it, damaging it. The plaintiff lives in Gretna, is a practicing physician of that town, and also its mayor, and is well acquainted with the road upon which he was driving, and with the existence of the electric railway running upon it.

We think it proper at this time to state the law governing this case, as we find it in our reports.

It was said in Walker vs Rodriguex, 139 La., 251:

"Street cars have the right of way; and it is the duty of others in crossing car tracks to look and listen for the approach of cars."

See also same volume p 185. 33 A., 157; 30 A., 19; 50 A., 1162; 51 A., 262, 299, 755; Elliott on Roads p 577; 27 Am, & Eng. Enc. Law p 57 XII; 36 Cyc 1490 J_ 42a350_

Where plaintiff has been guilty of contributory negligence he cannot recover.

In the case before us we are of opinion that the plaintiff was guilty of negligence. He drove his machine upon the railroad track at a time when the car was in close and dangerous proximity; the proof of that fact is established beyond question by the collision which occurred after he had run 30 or 60 feet upon the track; it was his undoubted duty to have stopped, looked, and listened before going upon the track; because, aside from his own knowledge of the existence of that track and of the car running upon it, the track was there, and he must have assumed that a car was running over it. He did not stop. He says he looked and listened; that he did not hear, nor see any coming car. Under these circumstances it is possible that the plaintiff saw neither the track nor the car. But his action is an admission that he knew of the probility of a car coming upon

102

that track. It is not necessary for us to doubt him. He was seated upon the left of his machine, while the car was on his right, and the top or hood of his machine was up, obstructing his view in the rear in the direction of the coming car. But when the law requires a party to look and listen, it demands a practical and efficient use of our senses; it holds us to have seen and heard all those things which would necessarily have struck our senses by a proper exercise of them. As was said in Snider vs R.Rd., 48 A., 1:

"It is a recognized rule that before attempting to cross the track of an electric car a person should look to ascertain whether prudently the crossing should be attempted. The rule contemplates that this should be done at a time and place when the reason upon which it is founded could be made effective. When the law requires steps of diligence and caution it will not be satisfied by the substitution therefor of vain and useless acts."

In the instant case the law required the plaintiff to so direct his angle of vision that it would have covered the railroad track and anything running upon it within a reasonable distance. This we are satisfied the plaintiff did not do; for if he had done so, it would have been a physical impossibility for him not to have heard and seen the car, and we believe he would have done so, and thus have avoided the damage. He testified that his hearing and his sight were both good. Two roads were open to him, a safe one and a dangerous one. He chose the latter without taking the necessary precautions to guard against the dangers and he must stand the consequences and not attempt to cast them upon others. His appreciation of the situation is thus expressed by him: "the business of the motorman is to watch out." His reason for going upon the track is immaterial, whether it was to avoid a hole in the road or to gratify his preference for that position; his duty to look and listen remained the same. His failure to do so was negligence and bars his right to recover.

It may be that his sight was obstructed by the hood of his

machine which was up; but this was his fault,- not the defendant's. In Murray vs R.Rd., 31 A., 490, where plaintiff was injured while driving a covered cart, the Court said:

"the inability to see the train was solely due to the cart-cover, which shut out the view completely. Surely, the defendant is not to be mulcted in damages because the deceased drove in a cart which excluded the view from either side; for it is manifest that if he had not been unable to look without his own vehicle, he must have seen the train approacing. His course was parallel with the train."

Also Schulte vs R.Rd. 44 A., 509; 52 A., 2151;110 La.,980.

In 17 La., 361, a man driving two mules hitched to a cart attempted to cross the Pontchartrain Railroad tracks ahead of a train that was coming at full speed and in full view. The Court rejected plaintiff's demand saying:

"Although we consider it indiscreet in the defendants to run their cars in a crowded street, at the rate the one in question was going, still it was not unusual, according to the testimony of three of the four witnesses, and as great presumption and folly are proved on the slave of plaintiff,we cannot agree to affirm the judgment." 1 A., 372; 3 A., 48; 11 A., 297; 23 A., 462; 52 A., 884.

"To enable a party to recover damages for injuries caused him by a collision with a street car, he must show that he exercised a reasonable degree of prudence and caution in endeavoring to avoid the accident. If, on the contrary, the evidence shows that the person injured by such a collision, while the car was in motion on the track, failed to exercise a reasonable degree of prudence, which, if he had done, the accident would not have occurred, he cannot recover damages from the company for the injuries received, either to his person or his property, even though the driver of the car be himself in fault." 23 A., 264; 39 A., 796.

In 28 A., 320, the plaintiff was walking on the railroad

track outside the rails, stepping from one cross-tie to another; an approaching train struck him from the rear and injured him. The Court said:

"We think it clear from all the evidence that there was negligence on the part of the young man in walking along the cross-ties and taking no care to look back or get off the track. x x In this case, conceding that there was a want of proper prudence and care on the part of the employees of the company in giving the usual signals of the approach of the trains, which is not clearly established, still the negligence of him in whose behalf damages are claimed contributed to the unfortunate result and precludes him from recovering." 30 A., 15; 31 A., 490; 40 A., 787.

In the case of Childs vs R. Rd. Co., 33 A., 154, the facts were that the plaintiff was walking on the side of and along the tracks of the defendant company. A car coming from the rear struck and injured him. The Court said:

"As he (plaintiff) was not on the track occupied by car 93, but in the narrow space between the two tracks, the driver of that car was not bound to warn him off, and cannot be blamed for running over him if plaintiff moved towards his track just at the moment that the car reached him. x x x Now, at that point, the street is very wide, and besides the ground occupied by the double track of the railroad company, and by the intervening space, there is on each side a wagon road fully fifteen feet wide, on which pedestrians can easily walk and keep away from the danger of being run over on the railroad track. If the inconvenience of walking on a dirt road, occasionally muddy, induces people to prefer walking on the plank road of the car company, they must do so at their peril, and must be understood as preferring to run the chances of danger than to incur the inconveniences of mud and inferior roads, and the plaintiff who took these chances should have been on his guard against the approaches of cars which are running there, at that time of day, every two or three minutes. ordinary prudence teaches that a

105

man walking on either of these tracks should direct his attention to the movement of the numerous cars which incessantly run back and forth, and cross each other so frequently x x x To reach a different conclusion would be to rule that a foot traveler walking on the track of a city railroad can use his own discretion, and take his own time, in giving way to a passing car, and to empower him thus to inconvenience and delay the passengers on the common carrier, and virtually to defeat the very end proposed by the law in authorizing such corporations for the safe and speedy transporation, for business or pleasure, of the innumerable persons who use this mode of conveyance in all the large cities of this continent." 47 A., 833.

In Brown vs R. Rd., 42 A., 350, the Court said on p 354:

"On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and due diligence to ascertain whether a train is approaching. x x Before attempting to cross the railroad track, a traveler is bound to use his senses - to listen and to look - in order to avoid any possible accident from an approaching train. x x x Statutes and municipal ordinances in every jurisdiction prescribe specifically the duty of railway corporations in respect to railway crossing; but no failure on the part of the railroad company to do its duty will excuse any one from using the senses of sight and hearing upon approaching a railway crossing, and whenever the due use of either sense would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence, without any reference to the railroad's failure to perform its duty." 100t. App. 258; 42 A., 990; 44 A., 285; 48 A., 1; 933; 50 A., 1087. 1 Ct app 291 - 114 La 825 -

"On approaching a street crossing of a railway track in a City, it is the duty of a traveler to exercise his senses of sight and hearing and look and listen for an approaching train. His failure so to do is negligence.

106

which, in case of collision, will prevent his recovery of damages for injuries sustained." 44 A., 280, 509; 47 A., 268; 48 A., 23.— 5 Ct app 119

"The driver of a tally-ho who, in attempting to cross a railroad track comes in collision with a rapidly approaching train, whereby the vehicle is demolished and one of the passengers killed, is guilty of gross carelessness which subjects the proprietors to damages." 47 A., 1391.

"The authorities are numerous and uniform to the effect that a person whose business or pleasure occasions him to use the streets of a city which are traversed by electric cars is guilty of negligence if he fails to employ proper precautions for his safety. He is bound to look and listen for the approach of cars, and to exercise ordinary care and caution to avoid possible danger. of a collision; x x x failing to take such necessary precautions for his safety, the injured party is guilty of that negligence which deprives him of the right to reimbursement for injury received." 51 A., 262, 299, 755; 52 A., 417, 2149; 131 La., 559.

In the case of Ponsano claiming damages against a city railroad for a collision, 52 A., 245, the Court thus puts the case:

"The question arises as to whether it was possible for plaintiff to see the car of the defendant company before his horse stepped on the track, in time to stop and avert the accident. x x It is evident that if plaintiff did not see the car, it was because he did not look in the direction in which it was coming." The judgment for defendant was affirmed.'

Not to look to see if a car is coming before attempting to cross the track of an electric car is such negligence as will preclude recovery for injuries caused by a collision. 106 Ia., 237.

"The recognized rule is that before attempting to cross a railway track a person should stop, look, and

listen." 110 La., 970.

"One who attempts to drive a wagon across a street railway track in front of an approaching street car, that could and should with reasonable care be seen and heard approaching,is guilty of negligence and is not entitled to damages for injuries received from a collision with the street car. " 137 La., 830.

"From the fact that there was nothing to obstruct the plaintiff's view of an approaching trolley car at listance from the position he occupied when he backed s automobile upon the railway track and was struck ʄ an approaching car, the presumption is either that .ie did not look with sufficient care for the approaching car before going upon the track, or that he did not heed the danger that he should have seen if he did look." 142 La., 529.

The obligation to stop, look, and listen, applies to electric street railways. 49 A., 1302; 48 A., 1; 110 La., 970; 142 La., 529; 137 La., 830.

"But where a party goes on the track for the purpose of using it as a highway, he, to a certain extent, assumes all risks, and it would require very gross negligence, amounting to malice, to make the railroad company liable for an injury to him, and this rule is particularly applicable when the party injured has a safer mode of travel by a public highway, as in the instant case." 46 A., 251. *2 Ct App 379*

"When there are two avenues of travel and the more dangerous one is selected, the party injured cannot recover, if the injury inflicted was due to the risk incident to the route selected. The traveler assumes all risks in such cases." 48 A., 807; 27 A., 54,Johnson vs R. Rd.; 49 A., 484; 33 A., 157; 47 A., 834 .

But although plaintiff's conduct was negligent, the modern jurisprudence still entitles him to recover if he proves that defendant might have avoided the accident by the exercise of ordinary care. Vaughn vs Ry. Co., 13 Ct. App.,116;

108

and cases there quoted; 52 A., 417' 106 La., 239; 121 La., 39; 116 La., 789; 128 La., 933.

The plaintiff charges that the defendant was running at an excessive rate of speed. The evidence is that the car was running at about 12 or 15 miles an hour. There was no state law nor city ordinance regulating the rate of speed, the defendant had therefore a right to run at such rate as it deemed beneficial to itself, consistently with safety to its passengers and to the public. Excessive speed is relative. What might be excessive speed through populated cities would cease to be so in the open country with few persons crossing the track. 39 A., 797; 106 La., 111.

The rate of speed must be dictated by common prudence. 46 A., 248.

"If the car in this instance was traveling at no higher speed than fifteen miles an hour, the defendant was not at fault, for although a railway company may not always run its cars at the maximun rate allowed by law, regardless of the particular conditions existing at the moment, there were no particular conditions existing on St. Charles Avenue, at a quarter to six o'clock on the morning of June 19th, 1901, which rendered it improper or unsafe to operate a car at that speed. "
110 La., 979, Heebe vs R. Rd. Co.

We have no reasons to believe that any conditions existed on the road one mile above Gretna, outside of the City limits, to render a fifteen mile speed dangerous.

Plaintiff's next contention is that it would have been impossible for the motorman, had he been in the exercise of due care, to have seen the plaintiff upon the track, to have stopped the car, and thus avoid the accident.

The evidence of the motorman is that the plaintiff "bolted" upon the track within fifteen feet of his car, that he shouted to the plaintiff, put on the brakes, and tried in vain to stop his car in time. The plaintiff testifies that he had driven his machine over the rail for a distance of about 40 feet before the car struck him; on two other occasions he says 30 feet; another witness says 65 feet, and a third 50 or 60 feet.

109

If the car was running at a speed of 15 miles an hour, it was equivalent to one mile in four minutes, or 1320 feet in one minute, or 24 feet in one second. The motorman testifies that the machine crossed over on the rail within fifteen feet of his car, and in this he is not contradicted. If we add 15 to 60 we have 75 feet, equal to the distance between the motorman, when he first saw the machine, and the machine when it was struck. It took the motorman about three seconds to run over this distance. We cannot say that he would have had time to stop within a shorter time. In the case of Heebe,110 La., 981,the Court said "that it took him, an avowed expert, 3½ seconds merely to go through the motions necessary to apply the stopping power." The distance within which a car running at a speed of 15 miles an hour can be stopped depends upon many circumstances. In Schwartz vs R.Rd., 30 A., 19, the Court said:

"What is that distance? It then varied, according to circumstances, from three to 32 feet. This is the evidence introduced on the trial, and that evidence leaves us on a shoreless sea of doubt and uncertainty. It clearly shows that the possibility and the power to stop within the given distance depends upon the quality of the brake, the strength of the driver, that of the mule, (or Motive power) the pull which immediately precedes the checking, the load carried, the weight of the car, the condition of the weather, of the track, and the unobserved and untold causes which accelerate or obstruct the speed of a vehicle and the revolutions of its wheels."

The evidence is that the motorman hollowed and struck his gong as soon as he saw the automobile coming upon his track; about 15 feet ahead of him; there was no necessity for his doing so earlier, as he had no reason to anticipate that the machine would do so; of course it was then too late either to allow plaintiff to get out of the track or to enable the motorman to stop; but this was not the fault of the motorman.

There is nothing in conflict with this opinion in Hart vs Bonura, 12 Ct. App., 171, where the collision was between two vehicles, while the defendant in this case is a street railway, having the rights of way

Bomura had no reason to believe that a vehicle was behind him, about to pass him, while the plaintiff in this case was informed by the tracks themselves that a car might be expected at any moment, and that he might have seen it if he had looked for it. As was said in Vincent vs R. Rd., 48 A., 935:

> "A railroad track of itself has been held to be a
> warning of danger."

It is therefore ordered that the judgment herein be reversed, and that there now be judgment in favor of the defendant the West New Orleans Light and Traction Company and against the plaintiff Dr. Charles F. Gelbke dismissing his demand at his cost in both Courts.

March 6th., 1919.