## Commonwealth of Pennsylvania v. The Pittston Ferry Bridge Company, Appellant.

*Equity—Injunction—Obstruction to public road.*

A decree commanding the removal of a stone pier in the approach to a bridge from the limits of a street is erroneous where the master in the case reported that it was impossible to say with any degree of certainty whether or not the pier was in the highway, although he reported that the preponderance of testimony showed that the same was partly at least within the original lines of the street, but that the evidence as to the location of the pier therein was insufficient to warrant a chancellor in decreeing its removal.

Where there is a dispute as to the essential fact of what part of the pier, if any thereof, is within the present lines of the public road, the complainant is entitled to no relief with regard to the pier until that fact be established, and the decree is incapable of specific enforcement.

*Equity—Approaches to bridge—Public interest.*

Where the approach to a bridge which rested partly on a pier was made with the consent of the municipal authorities and of the predecessors in title of the only one whose private property was shown to be injured, and where the public generally had ceased to use the street affected by said pier so that no real public interest was to be subserved, a court of equity may withhold its aid, or at least require the public right to be strictly proved.

*Practice, equity—Supplemental bill—Effect of original decree.*

On supplemental bill to enforce a decree unreversed, and which it is too

late to appeal, the court may examine the original decree and see if it is one which it can enforce, and if so whether in sound equity it ought to do so.

Argued April 15, 1896.   Appeal, No. 241, Jan. T., 1896, by defendant, from decree of C. P. Luzerne Co., No. 2, Feb. T., 1886, in equity, granting injunction in favor of the plaintiff, the Commonwealth of Pennsylvania.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.   Reversed.

Bill in equity for an injunction.

This bill was before the Supreme Court on an appeal by the commonwealth and is reported in 148 Pa. 621.

The present proceeding was a supplemental bill by the plaintiff reciting the former proceedings; that on appeal to the Supreme Court the said decree was affirmed; that since the entry of said decree and its affirmance by the Supreme Court, the defendant company, notwithstanding its sworn answer that it was about to replace its temporary structure with a permanent one, and in violation of the letter and spirit of the second paragraph of said decree, allowed and still allows its temporary bridge to remain as a temporary approach to its bridge proper, so that filth and water drip from its floor on the highway beneath, and apparently proposes to occupy, for all time, the said highway with timbers, boards, braces, props and pillars in support of said bridge, in unlawful obstruction of the road, and as a public nuisance; that since said decree, as well as since 1885, in contempt of the third paragraph of the decree, the defendant has continued to support the approach upon the said stone pier erected in the "Carbondale Road," and has neglected to remove the pier from the limits of the highway, to the common nuisance of the public.

The prayer of the supplemental bill was for:

1. A decree compelling defendant to carry out the aforesaid decree, and to give effect to the same by a perpetual injunction compelling defendant to immediately abate the encroachment of the "Carbondale Road" with the stone pier, and the immediate removal of the timbers, boards, braces, props and pillars supporting the approach, so that the public may enjoy the free use of the highways aforesaid.

2. That the defendant pay the costs.

3. For other necessary relief.

In addition to the facts set forth at length in the report of the case in 148 Pa. 621, the master, G. R. Bedford, reported as follows :

There is no evidence of either of said roads having been regularly laid out, but their use fully establishes their character as highways, though the defendant claims that the Ferry road was a private way to a ferry, the ownership of which the defendant subsequently acquired. It is true in a measure of both these roads that their former limits cannot be defined with any degree of exactness, but this is only material in solving the question as to whether certain obstructions hereafter mentioned are within or without said roads. . . .

The supporting pillars afford no obstruction to public travel, and the evidence as to the pier is insufficient to warrant a chancellor in decreeing its removal, but were this otherwise it would be of little help to the commonwealth's case, because a span of two hundred and one feet could readily be constructed, sustained at each end only, thus doing away with the pillars and the pier in the intervening distance. The superstructure is, therefore, as I regard the situation, the real matter involved, and I propose confining myself to the consideration of the defendant's right to maintain the same.

The court below, LYNCH, J., entered the following decree :

1. The defendant company is enjoined within ninety days from the date of this decree from maintaining the elevated approach erected in extension of its toll bridge, in a southerly direction from the southwesterly bank of the Susquehanna river directly over and above the Ferry road, as described in the original bill, in such a manner that filth or dirty water will be allowed to fall or drip from the floor of the same upon the highway, and is commanded and enjoined within the said ninety days to remove from the limits of the said highway the timbers and boards now erected therein in support of said approach, and is thereafter perpetually enjoined from supporting said approach so as to interfere with or obstruct the full and free use by the public of both the Ferry and the Carbondale roads.

2. The defendant company is commanded and enjoined within

ninety days from the date of this decree to take down and remove so much of the above pier (used for a support of its said approach) as is within the limits of the said road or public highway.

3. The defendant company is directed to pay the costs of the supplemental proceedings.

The defendant appealed.

*Error assigned* was above decree.

*Alexander Farnham,* for appellant.—The commonwealth has started out by charging on the defendant a nuisance by way of encroachment or purpresture. It devolved on the commonwealth to show the extent, if any there was, of the same. The finding of the master and the judgment of the court left it doubtful. In such case equity will not interfere: City of Phila. App., 78 Pa. 39.

The defendant insists that the same measure of proof of a nuisance should obtain in equity as in a court of law; in other words that the extent of the alleged encroachment should be shown or found. Had the defendant been indicted and convicted of a partial encroachment, how could its abatement have been enforced by the sheriff without the jury having found its exact extent?

One of the great objects justifying the intervention of a court of equity by injunction is to avoid a multiplicity of suits. The injunction ordered by this supplemental decree, on the other hand, invites further litigation unless the defendant takes away all sub-support from its approach, because if it undertakes to leave or place sub-support outside of where it thinks the line of the road is, it does so subject to further attack on that point, the whole inquiry being reopened.

Taking the original bill and answer and the master's actual finding, there was error in law apparent in the decree and this would justify a bill of review or the refusal to enforce the decree upon supplemental bill by reason of the error apparent in the original decree: Milford's Ch. Pl. (6 Amer. ed.) 115; Whiting v. Bank, 13 Peters, 14; 2 Dan'l Ch. (3d Amer. ed. Perkins) 1613; Wadhams v. Gay, 73 Ill. 437; West v. Skipp, 1 Ves. Sr. 245.

*John S. Harding* and *Henry W. Palmer*, with them *Garrick M. Harding* and *W. U. Hensel*, attorney general, for appellee.—
The supplemental bill was brought in aid of a final decree and to
give full and complete effect to it: Winton's App., 97 Pa. 385 ;
Williams' App., 147 Pa. 274. The former decision is final:
Hermann on Estoppel and Res Adjudicata, sec. 51, p. 42.

On supplemental bill, although the courts may examine the
justice of the former decree, it must be on proofs taken in the
cause wherein the decree is made : Johnson v. Northey, 2 Ver-
non (Chancery Reports), 407. The former decree is conclusive
evidence of every fact on which it must necessarily have been
founded: Hamner v. Griffith, 1 Grant, 193 ; 6 Brewster's Equity
Practice, par. 6095.

Wadhams v. Gay, 73 Ill. 415, was by a divided bench and is
not sound in principle : Hermann on Estoppel and Res Adjudi-
cata, sec. 51, p. 43.

OPINION BY MR. JUSTICE MITCHELL, July 18, 1896 :

When this case was here before, 148 Pa. 621, it was upon
the commonwealth's appeal from the refusal of an injunction.
The bill was filed to prevent the rebuilding of the approach to
the bridge upon the grounds as stated in the opinion of this
court, that it was ultra vires and was a public nuisance by inter-
ference with the highway. The master negatived both grounds
and advised a dismissal of the bill, but the court below was of
opinion that the approach was in effect a relocation of the ter-
minus of the bridge, and as such was ultra vires. An injunc-
tion against the rebuilding was however refused on the ground
that the disadvantages would be without corresponding benefit.
The complainant was therefore left to its remedies at law. The
decree was affirmed in this court but upon the broader ground
that the proposed approach was not a relocation nor ultra vires,
but an exercise of the right to rebuild the bridge at a safe height
above the water, as demonstrated by experience, and the neces-
sary ancillary right after so building it to construct a proper
and convenient approach.

The present appeal is by the defendant and raises an entirely
different question. The decree of the court below enjoined the
appellant from supporting the approach upon a pier erected
wholly or in part within the limits of the Carbondale road, and

commanded the defendant, "immediately after building said elevated approach, to remove the present stone pier from the limits of the said highway." After the affirmance of this decree, the commonwealth filed a supplemental bill to enforce the order to remove the stone pier from the limits of the highway, and the court made a new decree commanding the removal within ninety days. From this decree the defendant has taken the present appeal.

We are obliged to hold that this decree was improvidently made. Neither it nor that part of the original decree on which it rests, is capable of specific enforcement without the establishment of the essential but disputed fact of the encroachment of the existing pier on the Carbondale road. That fact has never been judicially ascertained. The master refused to find it. In the view that he took of the case recommending the. dismissal of the bill, the fact became immaterial. It is true he reported that in his opinion the preponderance of the testimony was "in favor of the view that this stone pier is partly at least in the original lines of the Carbondale road," but he also reported that it was in the right of way taken by the Pa. & N. Y. Canal and R. R. Co., and his conclusion was that "the evidence as to the pier is insufficient to warrant a chancellor in decreeing its removal." The learned court below in its original opinion accepted the master's remarks upon the preponderance of the testimony, as a finding that part of the pier was in the highway, and adverting to the rule that the public is entitled to the whole highway whether ordinarily used or not, held that the removal of the pier in part at least must be commanded. In the face of the master's final explicit finding that the evidence was insufficient to warrant a chancellor in decreeing its removal, the view of the court can hardly be sustained, but even if it could, the decree would still be improvident, for the question remained, what part of the pier and how much of it was within the lines of the road. In this connection the master's use of the words within "the original lines" is very significant, coming immediately after the finding that "the exact limits of the Carbondale road as originally used were undefined," and followed by the recital of the subsequent changes in the road which will be noticed further on. In fact this part of the opinion and decree was of very subordinate

importance, and necessarily received less attention than the real contest which was upon the right to rebuild the overhead approach at all. Whether, if rebuilt, it should be rested on so much of this pier as might be in the highway, was a mere make-weight at best, and the court in decreeing upon it reached its "conclusion with less hesitation because the master reports that it (the pier) is not absolutely necessary to the structure." The court made no finding of the facts for itself from the evidence. The decree might and perhaps ought to be accepted as an inferential finding that a part of the pier is within the highway, but it was a finding on the master's report, and the inference could go no further than his language would carry it, that the pier "is partly, at least, in the original lines" of the road. The essential fact, what part if any is within the present lines, remained undetermined, and without it the plaintiff had no claim for relief with regard to the pier.

On the hearing of the supplementary bill and answer, the court below treated the first decree and its affirmance by this court, as conclusive, and without further inquiry into the fact of encroachment of the pier on the highway, decreed its removal in ninety days. This was error. The first decree was incapable of enforcement for the reasons already stated, and it got no assistance from the action of this court. That part of the decree was in favor of the commonwealth, and of course on the commonwealth's appeal it was not objected to, assigned for error, nor passed upon by this court in any way.

The present question therefore is now before us for the first time, and we are of opinion that the decree of the court below is erroneous not only on the ground already discussed, but on the merits. The case bears very strong indications of belonging to the class in which the name of the commonwealth is used not to enforce substantial rights in the public interest, but to assert a technical title for private ends. The Carbondale road, on which this pier is claimed to encroach, was never laid out by legal proceedings, but became a highway by popular use largely if not chiefly by persons coming to and from the ferry which crossed the river at this point. It ran parallel to the river, at the foot of a bluff or steep bank sixteen feet in height, and was without any defined limits. Between it and the river the state at a date fixed by the master as "some fifty years ago," con-

structed the North Branch canal, over which persons going to the ferry crossed by a bridge on the line of the ferry road, now known as Mill street in the borough of Pittston. In 1850 the appellant built its bridge, and in 1852 the borough of Pittston laid out its main street on the top of the bluff parallel to the Carbondale road and only twenty to twenty-five feet from it. In 1860 two railroads were built crossing the Carbondale road diagonally at grade, and later the canal passed into the hands of the Penna. & N. Y. Canal & R. R. Co., which drained it, built tracks upon its bed, and took down the bridge at the ferry road. In 1875 the larger part of appellant's bridge across the river having been swept away by flood, it was rebuilt at a higher level, and among other reasons to avoid the dangerous grade crossings of the railroad, an elevated approach was built, resting partly on the disputed pier, and connecting the bridge at its new grade with Main street on top of the bluff. This change was made with the consent of the borough of Pittston, and of some if not all the owners of property on the ferry road, including the predecessors in title of Mr. Ross who is really the active plaintiff in this litigation. In consequence of these changes, as the master reports, "instead of the Carbondale road the great mass of the people used Main street which was every way preferable."

The same popular action which established the road in the beginning, relegated it to disuse when it no longer served the public convenience. On this subject the master reports, that "in the view I take of this case, public rights are not involved. . . . The only private property that was shown to be injured is the property of Mr. Ross. His purchase was after the elevated bridge was built, and that fact must have been in the minds of the parties when the sale was made." And the learned court below based its refusal of the injunction asked by the bill, largely on "the advantages to the public accruing from the maintenance of the present elevated approach, and the disadvantages without corresponding benefit to the public which would result from its demolition."

These considerations could not of course take away or impair public rights in a highway once acquired, but they are reasons why a court of equity may withhold its aid when no real public interest is to be subserved, and more especially why it may require the public right to be strictly proved. Upon this last

principle we rest this case. The commonwealth has failed to establish the fact of the occupation of any part of the highway by the pier in question. The master reported that it was " impossible to say with any degree of certainty, whether or not the stone pier is in the highway," and further that " the evidence as to the pier is insufficient to warrant a chancellor in decreeing its removal." There has been no finding to the contrary except as already noted by insufficient inference, and the conclusion of the master that the bill should be dismissed was the logical and proper disposition of the case. This appeal comes too late for us to take that course now with regard to the original bill, but the commonwealth having found it necessary to invoke the aid of the court by supplemental bill to enforce the original decree, we are entitled to examine if that decree is one that we can enforce, and if so, whether in sound equity we ought to do so. For reasons already stated we are of opinion with the appellant on both these questions.

Decree reversed and injunction dissolved with directions to dismiss the supplemental bill. Appellee to pay all costs subsequent to the filing of said supplemental bill.