# Commonwealth, Appellant, v. Philadelphia, Harrisburg and Pittsburg Railroad Company.

*Railroads—Corporate powers—Charter rights—Acts of March* 22, 1867, *P. L.* 542, *April* 10, 1867, *P. L.* 1122, *February* 20, 1869, *P. L.* 230, *April* 30, 1869, *P. L.* (1870) 1439, *and May* 3, 1869, *P. L.* (1870) 1440.

Where by charter granted by the legislature in 1869 a company was authorized to take and hold lands and mineral rights, to manufacture and prepare for market lumber and other articles produced therefrom, to mine and prepare for market coal, iron ore, limestone, fire clay and other minerals, to transport all or any of said articles to market, and was authorized and empowered to construct and operate a railroad with branches from any part of its lands to connect with any other railroad, and in the construction and operation thereof was given all the powers and privileges specified in the general railroad act of 1849 and its supplements, and " all the rights, powers and privileges of a general transportation company," such company, after complying with the provisions of its charter as to the termini of its railroad, was not restricted to the carriage of the products of its own lands to market, nor did its right to maintain and operate such railroad cease when it ceased to have such products to carry.   Franklin R. R. Co. v. Clarion Land Co. 54 Pa. 28, distinguished.

*Railroads—Forfeiture of charter—Collateral attack—Nonuser—Indictment for nuisance.*

On an indictment of a railroad company for a nuisance for maintaining an alleged illegal crossing over a highway, the question of the forfeiture of the company's charter for nonuser of a portion of its line or for delay in connecting its railroad with one of the termini mentioned in its charter cannot be raised; nor in such proceeding can the validity of the company's charter be attacked upon the ground that the title of the act incorporating the company did not conform to constitutional requirements contained in the constitutional amendment of 1864, where it is alleged in the indictment that the defendant is " an existing corporation duly chartered by the Commonwealth of Pennsylvania," and where it appears that the commonwealth, with knowledge of the facts, encouraged the expenditure of large sums of money by the company, and the giving of credit thereto by third persons upon the faith of its grant, and neglected and abstained from asserting its supposed right to repudiate the act of its legislature, and positively and affirmatively recognized the right asserted by the railroad company during a long period of years.

*Railroads— Crossing—Nuisance—Province of court and jury.*

Where a railroad company is indicted for maintaining an alleged illegal crossing over a country road, and it appears that the laying of a second track at the point in question somewhat narrowed the part of the road

which could be traveled, but it was not absolutely free from doubt whether to such an extent as to impede travel, the question as to whether travel was impeded is for the jury and a verdict and judgment for defendant will be sustained.

*Appeals—Reversal—Harmless error.*

An error which does the appellant no harm is not ground for reversal.

*Railroads—Illegal crossing—Nuisance—Evidence.*

On the trial of an indictment against a railroad for maintaining an alleged illegal grade crossing over a highway, it is not an improper exercise of the discretion of the court to refuse to permit a map of the locality to be sent out with the jury, where such map was not an exact representation of the height of an embankment at the crossing as compared with its length ; and this is especially so where a witness was permitted to use the map and to exhibit it to the jury in explanation of his testimony, and the jury were sent to view the crossing.

Argued Oct. 6, 1902.   Appeal, No. 12, March T., 1903, by plaintiff, from judgment of Q. S. Cumberland Co., Feb. T., 1902, No. 16, on verdict of not guilty in case of Commonwealth v. Philadelphia, Harrisburg and Pittsburg Railroad Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Indictment obtained for an alleged nuisance.

The second count of the indictment was as follows:

And the jurors aforesaid, on their respective oaths and affirmations aforesaid, do further present, that said Philadelphia, Harrisburg and Pittsburg Railroad Company, an existing corporation, duly chartered by the commonwealth of Pennsylvania, afterwards, to wit: on the day and year aforesaid, at the county aforesaid, and within the jurisdiction of this court, with force and arms, in, on, upon and across a certain public highway, there duly established, called Mill street, in the borough of Mount Holly Springs, in the county aforesaid, did unlawfully and injuriously erect, set up, establish, maintain, keep up, and continue, and cause to be erected, set up, established, maintained, kept up and continued a public and common nuisance, being an obstruction of a permanent character, on the traveled portion of said common highway, the said obstruction being located on said highway about 960 feet southward from the northern boundary of said borough, and extending upon and across said public highway from the eastern side of said Mill

street to the western side of the same, and consisting of an
embankment composed of clay, stones, dirt, cinder and wood
elevated about five feet above the level of said Mill street and
having placed thereon wooden ties on which are spiked ⊤ rails
of metal, and a wooden box through which run metal pipes,
the embankment, ties, ⊤ rails and wooden box and metal pipes
being so constructed and placed in position as to form a double
tracked railroad with signal attachments, extending from the
eastern side of said Mill street to the western side of the same,
over and upon which are drawn by locomotives from forty to
fifty trains a day, composed of passenger coaches and freight
cars, said railroad being laid upon said public highway with-
out authority of law, whereby the said common highway was
then and there rendered dangerous and difficult to the free,
safe and convenient passage and travel of the public along,
across and over the same, and did then and there and thence
continually until the day of the finding of this indictment, and
still does there unlawfully and injuriously continue the same
to the great damage and common nuisance of all the good
citizens of this commonwealth, contrary to the form of the act
of assembly in such case made and provided and against the
peace and dignity of the commonwealth of Pennsylvania.

At the trial the following offer was made:

Mr. Woods : It is proposed to offer act of assembly entitled
" An act incorporating the Miramar Iron Company," approved
May 3, 1869, recorded in laws of Pennsylvania of 1870,
page 1440 ; to be followed by proof that the corporate name of
the Miramar Iron Company was changed to the Harrisburg and
Potomac Railroad Company ; to be followed by the mortgage
of the Harrisburg and Potomac Railroad Company to the Prov-
ident Life and Trust Company, of Philadelphia, to be followed
by the foreclosure sale on said mortgage, and purchase by A.
A. McLeod, who formed the Harrisburg and Shippensburg Rail-
road Company ; to be followed by letters patent of the Harris-
burg Terminal Railroad Company, the merger of the Harris-
burg and Shippensburg Railroad Company and the Harrisburg
Terminal Railroad · Company into the present defendant, the
Philadelphia, Harrisburg and Pittsburg Railroad Company.

For the purpose of proving, first, that at the locus in quo
said corporation has not the right, under its corporate powers

from the state of Pennsylvania, to construct a railroad, and this for the purpose of proving the railroad at the locus in quo a nuisance per se.

Mr. Hambleton : The testimony is objected to, for the reason that the proceedings now offered do not prove the railroad as at present located a nuisance per se.

Mr. Woods : First, that the act entitled " An act incorporating the Miramar Iron Company" is defective in title, under the constitution of Pennsylvania, no notice being given in the title of the act to construct a railroad or to embrace any other act.  Second, that the act provides for the same rights and privileges as the Caledonia Iron, Land and Railroad Company, which company was given the right to construct a railroad from any of their lands for the purpose of carrying off the products of the land.

I might add to the offer that we propose to prove that at the time of the construction of the railroad at the locus in quo the Miramar Iron Company, now the Philadelphia, Harrisburg, and Pittsburg Railroad Company, had no lands from which they started its road, and that under their charter, first, no notice to the public is given in the title of the act, and secondly, if notice had been given, they did not comply with the requirements in the charter, and therefore have no right to build a railroad.

Mr. Wetzel : Objected to, that this evidence cannot be shown in this case ; the charter of defendant cannot be attacked collaterally.

The Court : We think the purpose of this offer is to collaterally impeach the charter powers of the defendant corporation, and this, under the law, cannot be done.  A similar question was raised and determined adversely to the present position of the commonwealth in the case of the Carlisle and Mount Holly Railway Company against the Philadelphia, Harrisburg and Pittsburg Railroad Company, in which the judgment of the lower court was affirmed in the case reported in 199 Pa. 532. The objections are sustained and an exception noted for the commonwealth.  [1]

A map prepared by Wm. Gowan and used in the presence of the jury was offered in evidence.

Mr. Hambleton : We object to the submission of this draft to

the jury because it is drawn in such manner as would convey to the jury a wrong impression of the elevation of this construction; it is distorted, and as we view it entirely improper to submit a plan of this sort to the jury. An exaggerated profile should not be submiteed to the jury.

We move the court to withdraw the map from the consideration of the jury for the reason that the construction recited on the map as being located on Mill street, in the borough of Mt. Holly Springs, is drawn upon an exaggerated scale; the horizontal scale being forty feet to one inch, and the transverse scale four feet to one inch. The map does not therefore truly represent the embankment on Mill street as it actually exists. Secondly, part of the map shows the elevation is not made in accordance with what actually exists, but simply for the purpose of demonstrating and explaining the contention of the commonwealth: this for the purpose of misleading the jury.

Mr. Woods: The draft is offered for the purpose of showing the actual measurements made by the engineer on the ground.

The Court: We admitted the draft in question an hour ago overruling the objection that it did not represent the condition of the ground at this time. Our purpose was to permit it to be used to show the jury the actual measurements upon the ground and as an illustration of the testimony of witnesses. Under this last objection of the defendant that by reason of its proportions being exaggerated and showing the locus in quo in a distorted form, it ought not to go out with the jury, we think that objection is well taken. It strikes us that every good purpose that could be subserved by this draft on behalf of the commonwealth has already been obtained, and we have never heretofore permitted a picture of a locus in quo to be admitted, under objection, that was not an exact and correct representation of the property. The objection is sustained and an exception noted for the Commonwealth. [2]

Mr. Hambleton: We next offer the evidence of I. A. Sweigard, John A. Glenn, F. S. Stephens, Gordon Chambers and F. H. Thomas taken on the trial of the case of the Carlisle & Mt. Holly Railway Company v. The Philadelphia, Harrisburg & Pittsburg Railroad Company, entered to No. 9, June term, 1900, in equity, contamed in appellant's paper book beginning at page 44 and continuing to the bottom of page 74, inclusive,

for the purpose of showing such laches on the part of the commonwealth as will now estop it from questioning the charter rights of the defendant railroad company, and its right to operate said railroad as now constructed, and also for the purpose of showing the right of the defendant railroad company to maintain its tracks at the locus in quo under the terms and conditions of its charter. (This testimony being offered under an agreement between counsel that the testimony taken on the former trial could be offered subject to objection as to its relevancy, competency and materiality.)

Mr. Woods : Objected to, first, that length of time would not legalize a nuisance. Secondly, that the expenditure of no amount of money would authorize the defendant, or its predecessors in title, to do that which it had no right to do. Third, that laches in a nuisance case cannot be imputed to the commonwealth. Fourth, the evidence is therefore incompetent and irrelevant.

The Court: The objections are overruled and an exception noted for the commonwealth. [7]

The commonwealth's points were as follows :

2. The uncontradicted evidence of the case being that neither the Miramar Iron Company nor the Harrisburg and Potomac Railroad Company did build the railroad at the locus in quo from any lands owned by them or either of them, the construction of the same constituted a nuisance per se. *Answer :* Refused. [8]

4. That the railroad track laid upon Mill street and public highway and maintained, operated and continued by the defendant corporation is a public nuisance per se. *Answer :* Refused. [9]

7. That the width of Mill street at the locus in quo has been reduced by the defendant corporation without any authority of law. *Answer :* Refused. Whether the width of the street has been unduly reduced is a question for the jury. [10]

8. That under the evidence and law in the case the defendant should be convicted of erecting and maintaining a public nuisance at the locus in quo. *Answer :* Refused. This point presents a question which should be determined by the jury. [11]

The court charged in part as follows :

[The Philadelphia, Harrisburg and Pittsburg Railroad Company is charged in the present bill of indictment with having erected, set up and continued a public nuisance across the north end of Mill street in the borough of Mount Holly Springs. The date at which the nuisance was erected is charged as having been January 11, of the present year, and it is also charged that the nuisance has been continued since that time. There are two counts in the bill of indictment, but your attention must be directed entirely to determining whether or not the defendant is guilty under the first one. We say there has been no evidence adduced to sustain the second count, and as to that we direct a verdict of not guilty.] [12]

[The question of fact, gentlemen, which you are called upon to solve is, did or does the railroad crossing at Mill street unreasonably inconvenience public travel ? In other words, has the defendant company done its full duty to the people since January 11, 1902, in the construction and maintenance of said crossing ?

It appears that the company put in a second track over Mill street in September last which necessitated the remaking of the approach on the south side, and the same was finished on January 21. The evidence has shown that in September the south approach was in a condition which made passage very difficult, because at that time the work was in its initial stage.

The commonwealth contends in the first place that the completion of the approach was unwarrantably delayed until the defendant received a stimulus on January 11 from the information which was made in this case, and that the public had to suffer up until January 21 when the work was done.

Secondly, the commonwealth takes the position that as the highway was laid out at a width of twenty feet, and this width has been reduced by the defendant on a portion of the south approach to fourteen feet, and on the top of the bank to fifteen and three tenths feet, and on a part of the north approach to seventeen and eight tenths feet, that thereby the defendant has been guilty of the commission of a nuisance.

Such a conclusion, however, does not necessarily follow, for the correct test of this matter is, has the crossing been so constructed as to give adequate accommodation to those who

have occasion to pass over it? If it has been, then the curtailment of the width, the lessening of the width of the road, can not be considered to be a crime.

These inquiries you will have to dispose of, and in order that we may definitely know what your findings are, a paper will be sent out with you containing the two following written questions, which you are requested to answer in writing:

1. Is the defendant guilty of having maintained a nuisance on Mill street after January 11, 1902?

2. Is the defendant guilty of now maintaining a nuisance on Mill street by reason of the crossing there being of a less width than twenty feet?] [15]

Verdict of not guilty. Commonwealth appealed.

*Errors assigned* were (1, 2, 7) rulings on evidence, quoting the bill of exceptions; (8–12, 15) above instructions, quoting them.

*R. W. Woods*, with him *Thomas E. Vale*, district attorney, and *Robert McMeen*, for appellant.—A railroad company has not the right to occupy a street to build a railroad upon it unless such right is clearly conferred by the legislature. The unauthorized occupation of a street by a railroad is a nuisance per se: Weimer on Railroads, p. 871, sec. 563; Trickett on Boroughs, p. 506; Penna. R. R. Co.'s Appeal, 115 Pa. 514; Penna. R. R. Co.'s Appeal, 93 Pa. 150; Com. v. Greybill, 17 Pa. Superior Ct. 514.

In a nuisance per se the wrong is established by mere proof of the act: Com. v. McNaugher, 131 Pa. 55; Com. v. Marshall, 137 Pa. 170; Penna. R. R. Co.'s Appeal, 115 Pa. 514; Dennis v. Eckhardt, 3 Grant, 390; Penna. R. R. Co.'s Appeal, 93 Pa. 150; Barker v. Hartman Steel Co., 129 Pa. 551; McNerney v. Reading, 150 Pa. 611; Glenn v. Com., 5 Cent. Repr. 492; State v. Woodward, 23 Vt. 92; Wood on Nuisances, 255, 260; Com. v. Erie, etc., R. R. Co., 27 Pa. 339.

Nor can this right be acquired by purchase, lease or otherwise: Barker v. Hartman Steel Co., 129 Pa. 551; Hopkins v. Catasauqua Mfg. Co., 180 Pa. 199; Com. v. Greybill, 17 Pa. Superior Ct. 514.

The Caledonia Company under its charter could not carry

freight for others or passengers.   It was simply a private. corporation, given the right of eminent domain to construct a railroad to carry its product to market: Edgewood Railroad Company's Appeal, 79 Pa. 257 ; Allegheny v. Ohio & Pa. R. R. Co., 26 Pa. 358; Bank of Penna. v. Com., 19 Pa. 144; Penna. R. R. Co. v. Canal Commissioners, 21 Pa. 9 ; Com. v. Erie & North East R. R. Co., 27 Pa. 339 ; Fertilizing Company v. Hyde Park, 97 U. S. 659; Junction Passenger Railroad Co. v. Williamsport Passenger Railroad Co., 154 Pa. 116.

The act incorporating the Miramar Iron Company is unconstitutional : Dorsey's App., 72 Pa. 192; Union Pass. Ry. Co.'s App., 81 * Pa .91 ; Rogers v. Manufacturers' Improvement Co., 109 Pa. 109.

Lapse of time and expenditure of money will not legalize a nuisance.   Kittaning Academy v. Brown, 41 Pa. 269 ; Kopf v. Utter, 101 Pa. 27 ; Com. v. Moorehead, 118 Pa. 344; Com. v. McDonald, 16 S. & R. 390 ; Phila. & Trenton R. R. Co., 6 Wh. 25 ; Pittsburg v. Epping Carpenter Co., 194 Pa. 318 ; Com. v. Greybill, 17 Pa. Superior Ct. 514; Com. v. Alburger, 1 Wh. 469 ; Rung v. Shoneberger, 2 Watts, 23 ; Wartman v. Phila., 33 Pa. 202 ; Phila. v. Phila. & Reading R. R. Co., 58 Pa. 253.

The siding or southern track a nuisance per se.

*Conrad Hambleton,* with him *J. W. Wetzel,* for appellee.— The mere construction of a railroad track across a public highway in pursuance of law is no nuisance : Danville, etc., R. R. Co. v. Commonwealth, 73 Pa. 29.   But it must be constructed in such a manner as not to impede the passage or transportation of persons or property along the same : Act of February, 19, 1849 sec. 10 ; Northern Central Ry. Co. v. Commonwealth, 90 Pa. 300.

The facts of this case put it without the power of the commonwealth to proceed against the defendant as attempted in the second count of the indictment.   Whether the title of the act incorporating the defendant is defective, or whether the defendant exceeded its charter powers in the original construction of its railroad are questions which the state has by its laches estopped itself from inquiring into : Com. v. Bala, etc., Turnpike Co., 153 Pa. 47 ; Atty. Gen. v. Delaware. etc., R. R.

Co., 27 N. J. Eq. 1; Atty. Gen. v. Johnson, 2 Wilson's Ch. 87.

OPINION BY RICE, P. J., October 5, 1903:

The act, entitled "An act incorporating the Miramar Iron Company," purported to confer upon the company thereby incorporated "all the rights, powers, privileges, franchises and immunities" of the Caledonia Iron, Land & Railroad Company, and made it subject to the provisions and restrictions of the act incorporating the latter company and the several supplements thereto: Act of May 3, 1869, P. L. (1870) 1440. By appropriate corporate action, the authority for which is not disputed, the name of the Miramar Iron Company was changed in December, 1871, to Harrisburg & Potomac Railroad Company. In January, 1874, the latter company executed a mortgage to the Provident Life & Trust Company for $1,800,000 upon its railroad, real estate, corporate rights and franchises, and in July, 1890, pursuant to foreclosure proceedings, the trust company conveyed the same to A. A. McLeod. In the same year and month Mr. McLeod conveyed the railroad and other property to the Harrisburg & Shippensburg Railroad Company, a corporation formed by the persons for whom, and on whose account, they were purchased. In the meantime (June 3, 1889) the Harrisburg Terminal Railroad Company had been incorporated with authority to construct, maintain and operate a railroad from Bowmansdale, in Cumberland county, to Harrisburg, and by articles of consolidation and merger, dated in July, 1890, and duly filed in the office of the secretary of the commonwealth in August of the same year, these two companies, the Harrisburg & Shippensburg Railroad Company and the Harrisburg Terminal Railroad Company, were united to form the Philadelphia, Harrisburg & Pittsburg Railroad Company, the defendant in the present case.

It is thus seen that the defendant has succeeded to the "rights, powers, privileges, franchises and immunities" of the Miramar Iron Company, to determine which we are referred to the act, and supplements thereto, incorporating the Caledonia Iron, Land & Railroad Company.

Section 5 of the act incorporating the latter company (Act of March 22, 1867, P. L. 542) authorized and empowered the

company to take and hold, in fee simple or for any less estate
or upon lease, lands and mineral rights not exceeding 16,000
acres at any one time ; to mortgage, sell or lease the same ; to
manufacture and prepare for market lumber and other articles
produced therefrom ; to mine and prepare for market coal, iron
ore, limestone, fire clay and other minerals; to manufacture
iron and fire brick; to transport all or any of said articles to
market; and to do all such other acts, and to make all such
improvements and erections as a successful promotion of said
business would require.   The 6th section of the act, which
we quote in full, reads as follows : " That it shall be lawful for
said company to construct and operate a railroad, or railroads,
with branches, from any part of their lands, to connect with
the Caledonia & South Mountain Railroad, or its branches,
or with any other railroad now, or hereafter to be built: Pro-
vided, That in the construction of the same, the said company
shall have all the powers and privileges, and be subject to all
the limitations and restrictions, of an act regulating railroad
companies, approved nineteenth February, one thousand eight
hundred and forty-nine, and the supplements thereto."   Some
comment has been made on the fact that it was only in the
" construction " of its railroad that the company was given the
the powers and privileges specified in the act of 1849.   But we
need not stop to consider the effect of this language upon the
question before us, because the provision was enlarged by sub-
sequent legislation so as to include " operation " as well as
" construction," as we shall show presently.

A supplement to the foregoing act declared that after or-
ganization the company might proceed to purchase lands for
the purposes of the corporation, but could not purchase, lease
or hold more than 4,000 additional acres of land under the act
to which this was a supplement: Act of April 10, 1867, P. L.
1122.

A further supplement authorized the company to secure the
bonds, which under the 8th section of the original act it was
authorized to issue, by " mortgages upon the railroad, railroad
equipment, corporate franchises, real estate and all other prop-
erty of every kind whatsoever, acquired or hereafter to be ac-
quired by the said company : " Act of February 20, 1869, P. L.
230.

A still further supplement, passed·in the same year, provided in its 2d section as follows : " That in the construction and operation of its railroad or railroads, the said company shall enjoy all the rights, powers and privileges, and be subject to all the provisions and restrictions of an act regulating railroad companies," (act of 1849) "and the several supplements thereto, except so far as they are altered, amended or supplied by the act to which this is a further supplement, and the several supplements thereto : Provided, That said company shall have all the rights, powers and privileges of a general transportation company, and may construct, maintain and operate a telegraph along its line of railroad ; and the second proviso of the 18th section of said act regulating railroad companies, shall not apply to this company : " Act of April 30, 1869, P. L. (1870,) 1439.

1. This recital, tedious though it be, of the legislation relative to the Caledonia Iron, Land & Railroad Company, is the best answer that we can make, and we think it a complete answer to the suggestion that no right to construct or operate a railroad was conferred upon the corporation except for the purpose of carrying the products of its own lands to market. The exclusion of the second proviso of the 18th section of the act of 1849 is significant. Taken in connection with what precedes it clearly indicates an intention to extend the provisions of the remaining portions of the section to this corporation, and to make its railroads, when completed, " a public highway· for the conveyance of passengers, and the transportation of freight, subject to such rules and regulations, in relation to the same, . . . . as the president and directors may prescribe and direct." See Act of February 19, 1849, section 18, P. L. 79. And to remove all doubt upon the point it was expressly declared, as we have seen, that the corporation should have "all the rights, powers and privileges of a general transportation company." True, its lands were made the terminus a quo, and if it had no lands from which the things mentioned in the 5th section could be produced and transported, it could build no railroad. This was the point actually decided in Warren and Franklin Railroad Co. v. Clarion Land &c. Co. 54 Pa. 28, as we understand that case. We have not overlooked that part of the opinion of Justice READ, in which, speaking of a section

similar in terms to the 6th section of the act of 1867, above quoted, he said : " The object of this section was to give them the means of carrying the coal, oil and other minerals mined from their lands, and their produce to a point from which they could reach a market. It was not to build a railroad independent of their own lands, for the mere accommodation of the public, and for the company's pecuniary profit arising only·from general travel. If they had no lands they could build no railroad, and they could only build it from their own land to carry off its products," etc. Two things are to be·noticed in determining whether that case rules the present. First, the railroad in that case had not been built, and, strictly speaking, the question as to whether the company would be restricted in its use, if built, to the transportation of the products of its own lands was not before the court. Second, after this decision was rendered, the powers of the Caledonia Iron, Land & Railroad Company were very much enlarged by the 2nd section of the act of 1869, above quoted. The two cases are not parallel, and it would be a perversion of the case cited to treat it as binding authority for the proposition, that a corporation having the powers of the Caledonia Iron, Land & Railroad Company was restricted to the carriage of its own products to market, and, therefore, when it ceased to have such products to carry, its right to maintain and operate its railroad ceased. " The construction which it is the duty of the court to put upon a grant like this, is indeed strict against the grantees. But no construction can be sharp enough to withhold what is clearly given : " BLACK, J., in Cleveland, Painesville & Ashtabula R. R. Co. v. City of Erie, 27 Pa. 380, at p. 386. We do not deem it necessary to dwell longer upon this point.

2. But, say appellant's counsel, the railroad originally built by the Harrisburg & Potomac Railroad, successor in name to the Miramar Iron Company, did not touch any of the company's lands, and this is true. It appears, however, that in 1882 it was connected with the company's lands by what is called the Cleversburg branch, that for a period of years ore taken from the company's lands was transportated over it to the company's furnace at Boiling Springs, that this branch is still maintained but is used exclusively for the storage of cars. With the right to maintain and operate that portion of the main line lying

west of the Cleversburg junction we have nothing to do in the present case. It is sufficient for present purposes to show that long prior to the finding of this indictment the company had extended the railroad, which crosses Mill street in the borough of Mt. Holly Springs, to its lands, and for a considerable period used the whole of the railroad thus extended for the purposes, special as well as general, contemplated in its charter. The company having thus complied literally with the terms of its charter as to the termini, it seems plain that its railroad cannot be declared a nuisance per se upon the ground that the part thereof, which it had constructed and operated prior to that time, did not have the company's lands as one of its termini.

3. Much stress is laid by counsel for appellant upon the fact that the portion of the railroad known as the Cleversburg branch is not now used for the conveyance of passengers and the transportation of freight but is used exclusively for the storage of cars. We fail to see what bearing this fact can have upon the question whether the railroad at the crossing described in the indictment is a nuisance per se. As we have said, the company's charter authorized it " to construct and operate a railroad or railroads, with branches, from any part of their lands, to connect with the Caledonia and South Mountain railroad, or its branches, or with any other railroad now or hereafter to be built." The company built such railroad and the tracks at the crossing in question are part of it. We have assumed that we have a right to inquire and determine whether the franchises claimed by the defendant are included in the legislative grants above referred to, but whether we have a right, in this form of proceeding, to adjudge such franchises to have been forfeited by reason of the use of one portion of the railroad, remote from the locus in quo, for the storage of cars, instead of the conveyance of passengers and the transportation of freight, is an entirely different question. We do not mean to intimate that this would be cause of forfeiture even in a direct proceeding. No part of the railroad between the termini named in the charter has been abandoned. The whole of it, including the Cleversburg branch, is being used for legitimate railroad purposes. But even if the objection to the present use of that portion of the railroad were more serious, we think it

clear, both upon reason and authority, that it cannot be urged as a cause of forfeiture of the company's franchises except in a direct proceeding instituted by the commonwealth for that purpose: Commonwealth v. Allegheny Bridge Co., 20 Pa. 185; Murphy v. Farmers' Bank, 20 Pa. 415; Hinchman v. Phila. & West Chester Turnpike Co., 160 Pa. 150; West Phila. Pass. Railway Co. v. Phila. & West Chester Turnpike Co., 186 Pa. 459, at p. 467; Downingtown Gas & Water Co. v. Downingtown, 193 Pa. 255; Olyphant Sewage Co. v. Olyphant Boro., 196 Pa. 553. " The only evidence, competent to prove the forfeiture of a charter, is the judgment of a court directly on the point; and no inferior evidence can be admitted for that purpose, unless it is otherwise directed by the legislature in express and positive terms: " Irvine v. Lumbermen's Bank, 2 W. & S. 190. In the case of Hinchman v. Phila. & West Chester Turnpike Road, supra, Justice GREEN declared it to be the law, " that no charter to a corporation for a public purpose can be forfeited except by the commonwealth in a proceeding for that direct purpose." This rule or principle applies with equal force to the appellant's contention based on the delay in extending the railroad to the company's lands.

4. Finally, upon this branch of the case the counsel for appellant attack the validity of the charter of the Miramar Iron Company upon the ground that the title of the act granting it does not conform to the requirements of the constitutional amendment of 1864. It is to be borne in mind that the act was passed at a time when special legislation was not forbidden by the constitution, and when it was permissible, and very common in legislative practice, to extend and confer the rights, powers and privileges granted by an act incorporating one company to another company, as was done in this case, without re-enacting and publishing at length the provisions of the former act. To adopt the language of Judge BLACK in the case heretofore cited, the objection under consideration " goes not to the nature and essence and character of the law itself." It is not asserted that the legislature had no jurisdiction of the subject-matter, or that the law interferes with any right made inviolable by the constitution, or that it conferred any right or franchise which the legislature had not power to confer, but merely that the legislature neglected to clearly express the subject of the

act in the title.    In short, the objection goes to the form of the title, not to the power of the legislature over the subject-matter of the act.    Before entering upon a discussion of the question whether the objection is well founded, it will be well to consider whether the validity of the incorporation of the Miramar Iron Company and of the charter thus granted to it can be attacked at this time and in this proceeding.    We are of opinion that this latter question must be answered in the negative.

In the first place, it is distinctly alleged in the indictment that the defendant company is "an existing corporation, duly chartered by the commonwealth of Pennsylvania."    In view of this admission it may well be questioned whether it was bound to prove that it is a corporation de jure as well as de facto, or to defend the validity of the successive legislative grants which go to make up its charter.    It would seem that the second count of the indictment was drawn, not with a view to bring these matters into question, but only to raise the issue whether the maintenance and operation of a railroad at the locus in quo was within the scope of the powers thus conferred upon the company.

In the second place it appears from the evidence that the railroad in this place was built in 1872, or thereabouts, under what appeared, and was believed, to be the charter powers of the original company; that it was mortgaged in 1874 for $1,800,000, and pursuant to regular foreclosure proceedings was sold in 1890; that it was immediately reorganized by the purchasers in the mode prescribed by the statute under the name of the Harrisburg & Shippensburg Railroad Company; that it was consolidated with the Harrisburg Terminal Railroad in 1890, in good faith, and in accordance with the provisions of the general statute authorizing the consolidation of railroads, the corporation thus formed being the defendant in the present case; that the railroad forms a link connecting the Western Maryland & Baltimore & Ohio Railroad on the west with the Reading Railroad system on the east, over which at least forty trains pass daily; that the said railroad has cost several millions of dollars; that a mortgage securing bonds to a large amount, which have been sold and are held by third parties, has been placed upon the property and franchises thus held and claimed by the defendant; and that the commonwealth has

had knowledge of the construction of the railroad from 1874 to the present time through annual reports made, and the payment of taxes, to the state authorities, the tax paid on capital stock for the year prior to this indictment being $16,665. There is no controversy over these facts. They are set forth still more fully in the opinion filed by the learned judge below overruling the motion for new trial. The doctrine, sometimes asserted, that laches is never imputable to the commonwealth is not without exceptions, as was clearly shown by Chief Justice PAXSON in Commonwealth ex rel. Attorney General v. Bala & Bryn Mawr Turnpike Co., 153 Pa. 47. The similarity between that case and the present is apparent from the following quotation: " In the case in hand, were we to consider that the order of court amending the company's charter was ineffectual " ( it was claimed that the court was without jurisdiction of the subject-matter of the order ) " as concerns the extension of its road, it yet clearly appears that said extension was made under a mistake and belief as to the company's legal right, honestly entertained and based upon an order of one of the commonwealth's courts, which order stands unreversed and unappealed from; that the company has made a large expenditure of money on the faith of this mistaken belief; that the commonwealth knew, or ought to have known, and is chargeable with knowledge of this expenditure, and with knowledge of the company's mistaken belief, and encouraged that expenditure by neglecting or abstaining from asserting the commonwealth's rights." It was upon these grounds that judgment was entered against the commonwealth in a direct proceeding by quo warranto. The authority of the case has been recognized in Pennsylvania Schuylkill Valley R. R. Co. v. Philadelphia & Reading R. R. Co., 160 Pa. 277, and by our own court in Wenger v. Rohrer, 3 Pa. Superior Ct. 596. In the present case the railroad was built and is being maintained under a franchise granted by the commonwealth, irregularly perhaps, but nevertheless a franchise which the legislature had a right to grant. Not only has the commonwealth, with knowledge of the facts, encouraged the expenditure of large sums of money by the company, and the giving of credit thereto by third persons, upon the faith of its grant, by neglecting and abstaining from asserting its supposed right to

repudiate the act of its legislature, but it has positively and affirmatively recognized the right asserted by the defendant during a long period of years. The learned judge below thought that the principle upon which the Bala Turnpike case was decided would control the present case, and we are not prepared to hold the contrary. It would seem that a charter right, which has for its foundation a decree of a court, which had no jurisdiction of the subject-matter, is not more sacred than one which rests upon an act of the legislature which had power to grant it, but in doing so omitted to clearly express and define the powers of the company in the title of the act incorporating it.

But, in the third place, we need not, and do not, put our decision on the ground that the commonwealth is conclusively estopped. It may be safely rested upon the narrower ground that the validity of the defendant's charter cannot now be inquired into by any one, except the commonwealth, nor by the commonwealth, except in a direct proceeding instituted for that purpose. This case grew out of a controversy between the defendant and the Carlisle & Mt. Holly Electric Railway Company, the history of which is set forth in the opinion of Justice FELL in Carlisle & Mt. Holly Railway Co. v. Philadelphia, Harrisburg & Pittsburg R. R. Co., 199 Pa. 532. After reciting some of the facts to which we have alluded, the court concluded : " But it is wholly unnecessary to consider the extent of the charter powers of the defendant or the right of the plaintiff to inquire as to them. The railroad is now in place, and is a part of line of road over which more than fifty trains pass daily. It cannot be removed except at the suit of the commonwealth." A few months after that decision was rendered the burgess of Mt. Holly Springs made the information upon which this indictment rests, and the Carlisle & Mt. Holly Railway Company, in return for the advantages which it expected to obtain through a determination of the questions it had unsuccessfully raised in the former proceedings, agreed to become responsible for the costs, if any should be placed upon the nominal prosecutor or the borough. As was said in Commonwealth v. Pittston Ferry Bridge Company, 176 Pa. 394, " The case bears very strong indications of belonging to the class in which the name of the commonwealth is used not

to enforce substantial rights in the public interest, but to assert a technical title for private ends." But whilst it may have been competent to show who was behind the prosecution, for the purpose of enabling the jury to determine who was the real prosecutor, it is urged, and we concede, that the motives of the real or nominal prosecutor are immaterial in the present inquiry, that is, on this appeal. Leaving the evidence upon that subject entirely out of view, and bearing in mind that it has been authoritatively decided that this railroad cannot be removed "except at the suit of the commonwealth," how does the case stand? Under the undisputed facts is the commonwealth entitled to proceed in this way to accomplish that end, when to do so it must, in effect, deny the valid corporate existence of the defendant and one of its constituent companies? The defendant is, to say the least, a de facto corporation (Freedland v. Penna. Central Ins. Co., 94 Pa. 504) and in maintaining and operating its railroad at the locus in quo it is asserting a right apparently within its charter powers, which, we reiterate, the legislature was not forbidden to confer, and the exercise of which interferes with no right made inviolable by the constitution. Assuming that, notwithstanding its laches, the commonwealth may, in an appropriate proceeding instituted by the attorney general for that purpose, put in issue the validity of the grant of those powers and of the corporate existence of the defendant, we are clearly of opinion that a criminal prosecution, which any citizen may institute, for doing the very thing which its charter apparently authorizes it to do, is not the proper mode to obtain an adjudication of that question. To adjudge that the railroad at the locus in quo is an unlawful obstruction of the highway, a common nuisance, because the Harrisburg & Potomac Railroad, which was originally the Miramar Iron Company, was not created by or under any valid law of this commonwealth, and was never constitutionally invested with any franchises whatever, and, therefore, none passed to the purchasers at the foreclosure sale, is to imply as well that the Harrisburg & Shippensburg Railroad Company was organized without authority of law, and never had a valid corporate existence, and to imply further, that its consolidation with the Harrisburg Terminal Railroad Company to form the Philadelphia, Harrisburg & Pittsburg Railroad

Company was equally unauthorized by law.  If we are right in our construction of the statutes under which the railroad was built and is being maintained, the commonwealth could not obtain a conviction upon the second count of the indictment without first establishing all of these things.   But, not only are these matters excluded from the issue by the admission contained in the indictment, but it is well within the principle of the Bala Turnpike case to say that the commonwealth is precluded by its laches and positive acts from going into that inquiry in this case.   Whatever may be the rights of the commonwealth, the right to treat the act of the defendant in maintaining and operating a railroad at this crossing as criminal and punishable by fine is not one of them.   The court was clearly right in instructing the jury that there could be no conviction on the second count of the indictment.

5. Section 12, of the act of 1849, requires that, whenever it shall be necessary to cross any established road or way, the railroad shall be so constructed "as not to impede the passage or transportation of persons or property along the same."   It appears that in 1881 the company put in a second track, within the limits of its right of way, which necessitated the remaking of the approach on the south side.   In doing this the width of the highway, which could be traveled, was somewhat narrowed, but whether to such an extent as to impede travel is not absolutely free from doubt.   We can conceive of cases where, there being no conflict of evidence as to the facts, it would be the duty of the court to declare as matter of law that the construction of such approach in such manner as to narrow the traveled way, even to a slight extent, would be in contravention of the statute.   But we are not convinced that this can be laid down as a rigid and unvarying rule of law applicable as well to a country road, upon which there is comparatively little travel, as to a crowded street of a great city.   This distinction has been recognized in analogous cases.   See Monongahela City v. Fischer, 111 Pa. 9, and Commonwealth v. Shoemaker, 14 Pa. Superior Ct. 194, at p. 205.   The question is, is travel upon the highway unnecessarily impeded ?   A jury of the vicinage is quite as able and quite as likely to determine that question according to truth and justice as any other tribunal, and ordinarily, where it arises in a criminal prosecution,

it should be submitted to them, as was done in the present case. The jury upon a consideration of all the circumstances as disclosed by the evidence, aided by a view of the crossing, decided the question in the negative. We are not required to say, that this is the only verdict that was warranted by the evidence, or that we would determine the question of fact in the same way, if it were our duty to decide it. All that we decide or are called upon to decide is that, under the evidence, the question was properly submitted to the jury.

6. Some of us were inclined to think upon the argument that the portion of the charge, which is the subject of the fifteenth assignment of error, might be construed to mean, although not so intended by the learned trial judge, that there can be no conviction, on an indictment for maintaining a nuisance which had been abated prior to the date of the information, a general proposition that we are not to be understood as assenting to. But a more careful examination of the evidence has convinced all of us that, if there was a technical error in this part of the charge, it was harmless. In overruling the motion for new trial the learned judge showed that "the crossing was probably in worse condition on January 11, than at any previous time." At any rate, it is perfectly accurate to say, that the condition of the crossing complained of in the first count of the indictment, which was occasioned by the reconstruction of the approach, appears from the commonwealth's evidence not to have been improved at the date of the information but was as bad then as at any previous time. Under the commonwealth's own showing, and the defendant's as well, a finding that the condition complained of was in fact a nuisance prior to January 11, the date of the information, but was not so on that date, would have been unwarranted. The commonwealth was not harmed by having the attention of the jury directed to that date; and it is too well settled to require citation of authorities that an error which did the appellant no harm is not ground for reversal.

7. The objection to the map made by Mr. McGowan, the commonwealth's engineer, was that the vertical scale to which it was drawn was forty feet to the inch, and the horizontal scale four feet to the inch. It was so drawn, said the witness, "to make more distinct the irregularities of the surface; it

could not be done on a smaller scale ; a smaller scale horizontally and a larger scale vertically." Probably the jury would not have been misled if it had been sent out with them with proper explanation. Admittedly, however, it was not an exact representation of the height of the embankment at the crossing as compared with its length. Whether such a map should be sent out with the jury must, to some extent, be left to the sound discretion of the trial judge. We cannot say that it was improperly and injuriously exercised in the present case, especially as the witness was permitted to use the map and to exhibit it to the jury in explanation of his testimony, and the jury were sent to view the crossing.

All the assignments of error are overruled and the judgment is affirmed.